UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

JEWELRY 47, INC.,

                           Plaintiff,      : **CIVIL ACTION NO. 07-CIV-8272 (PAC)**
    v.                                   :
LARRY BIEGLER and ELOHIM    : Declaration In Opposition To Appointment of
FINANCIAL and DIONE TILLMAN  : Temporary Receiver

                        Defendants.

------------------------------------------------------X

Scott S. McKessy, declares under penalty of perjury:

1.      I am a member of Reed Smith LLP, attorneys for defendant Larry Biegler. I am fully familiar with the facts set forth herein, and submit this declaration, pursuant to 28 U.S.C. § 1746, in opposition to plaintiff's instant application for the appointment of a temporary receiver.

## INTRODUCTION

2.      The instant application – not to mention the complaint itself – is nothing more than an attempt to interrupt the sale of an 840 lbs emerald conglomerate (the "Emerald"). Plaintiff's entire case is based upon an agreement plaintiff has dubbed a joint venture between plaintiff, Jeff Downey and Larry Biegler. Plaintiff also names Dione Tillman, individually, and Elohim Financial, Inc. as defendants claiming that plaintiff has a binding agreement to sell the Emerald to Elohim Financial, Inc. There are, however, a number of problems with plaintiff's application – some grounded in misstatements of fact, some grounded in bad faith, and some even approaching criminal. But the bottom line is that plaintiff has failed to provide any support that would warrant this Court imposing one of the most severe forms of preliminary relief and it should be denied in all respects.

## FORGED DOCUMENT

3.      As detailed in the accompanying declaration of Larry Biegler, Mr. Biegler never signed the "agreement" upon which plaintiff bases its entire action – someone has forged his

signature on that document and plaintiff is now attempting to use it in order to bleed $7.5 million from the defendants. The document was purportedly signed during a lunch meeting held between Larry Biegler, Marco Diaz-Infante and Gil Weiss on May 30, 2007 in California. Of these three people, the Court now has before it two declarations (Mr. Biegler's and Mr. Diaz-Infante's) averring under penalty of perjury that Larry Beigler never signed the "agreement" on May 30, 2007 – or an any other time for that matter. Gil Weiss works for plaintiff – he has not submitted any statements averring Mr. Biegler executed the "agreement."

## BAD FAITH

4. Beyond the forgery issue, this action and the instant application appear to be filed in bad faith and for no other purpose but to frustrate a sale of the Emerald. First, plaintiff name Dione Tillman, individually, and Elohim Financial, Inc. as defendants herein claiming to have an agreement with Elohim Financial, Inc. for the sale of the Emerald. Noticeably absent from plaintiff's papers are any claims against these two defendants. Moreover, plaintiff has failed to produce a copy of any executed agreement with Elohim Financial, Inc. to support its instant application. But most troubling is the fact that Mr. Tillman is a named defendant, but the only allegation is that he entered into sale agreement with plaintiff on the behalf of Elohim Financial, Inc. In short, plaintiff affirmatively pleads no basis for naming Mr. Tillman individually. But then why name them herein? Is this merely an inappropriate attempt to chill the pending deal?

5. Second, on September 25, 2007, this Court issued an order setting October 2, 2007 as the day for the parties to appear in court on plaintiff's application for the appointment of a temporary receiver. But plaintiff or its counsel disseminated a Press Release stating that on September 25, 2007, this Court *already appointed a temporary receiver to oversee the sale of the Emerald!* A copy of the Press Release is annexed hereto as Exhibit A. But what purpose can misrepresenting this Court's order in a Press Release serve? Possibly chill potential buyers of the Emerald who are performing routine due diligence on the Emerald?

## NO JURISDICTION

6. As set forth in the accompanying Biegler declaration, this Court does not have jurisdiction over him or the Emerald. To begin with, the Emerald is not owned by Mr. Biegler, title to the Emerald is in B&B Services, Inc., a California corporation, and the Emerald is located in the State of California.

7. Plus, as Mr. Biegler further states in his declaration, Mr. Biegler has never been to the State of New York, he does not transact business in this State, and he most certainly did not engage in any activity in this State in connection with the "agreement." Plaintiff's papers contain no allegations that would contradict these facts.

## NO JOINT VENTURE AGREEMENT

8. Realizing that proceeding on a mere contract claim could not support the granting of the appointment of a temporary receiver, plaintiff is forced to recast its action as one based upon a joint venture agreement. Again, getting past the issue of forgery, the "agreement" plaintiff relies upon, on its face, precludes the "agreement" from ever being considered a joint venture: there is no expressed intent to form a joint venture; and there is no provision for the sharing of profits and losses. Indeed, the "agreement" is so one sided that all costs and expenses are to be born by Mr. Biegler, with only an upside for the plaintiff. Sounds a lot like something more of the ilk of a mundane broker's agreement – and not even an exclusive one at that.

## ACTION FAILS TO NAME ALL INDISPENSIBLE PARTIES

9. Plaintiff, in its rush to cobble together something to pressure a payment from defendants, failed to name all parties to the "agreement." Without Jeff Downey being named as a party herein, complete relief cannot be fashioned.

-4-

**WHEREFORE**, it is respectfully requested that this Court deny plaintiff's instant application in all respects and grant Mr. Biegler such other and further relief as the Court may deem just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 2, 2007.

                                                        _____
                                                               Scott S. McKessy

# BIEGLER DECLARATION

Scott S. McKessy (SM-5479)
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022
(212) 521-5400
Attorneys for Defendant Larry Biegler

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEWELRY 47, INC., <br><br> Plaintiff, <br><br> v. <br><br> LARRY BIEGLER, DIONE TILLMAN and ELOHIM FINANCIAL, INC. <br><br> Defendants. | Case No.: 07-CIV-8272 (PAC) |

## DECLARATION OF LARRY BIEGLER

LARRY BIEGLER, declares as follows:

1. I am one of the named defendants in this action. I am fully familiar with the facts set forth herein, and submit this declaration pursuant to 28 U.S.C. §1746, in opposition to plaintiff's instant application for appointment of a temporary receiver.

2. I am a resident of the State of California, and am the president and CEO of a California company called B&B Services, Inc.

3. I have never been to the State of New York and neither I nor B&B Services, Inc. have ever transacted any business in the State of New York – let alone transacted any business with plaintiff in the State of New York.

4. B&B Services, Inc. is the owner of the world's large emerald conglomerate (the "Emerald"). See Exhibit B.

5. The Emerald is presently in a secure location in California, and is under the control of LLB Financial, a lienholder of the Emerald. LLB Financial has had this lien since September 3, 2007. LLB Financial's approval is required before any access to the Emerald is allowed. And even then, the Emerald cannot be out of the secure facility for more than two weeks at a time.

6. In early May, 2007, Jeff Downey ("Downey") called me and met with me in California regarding the possibility of brokering the sale of the Emerald. Jeff Downey lives in California. I gave him some documentation regarding the Emerald at that time, and told him that on any deal he brought to B&B Services, Inc., that closed and funded, and that had a sales price of over $25.0 million, a 10% commission would be paid. For anything under that amount, however, no commission would be paid.

7. In Mid-May, 2007, Downey contacted Marco Diaz-Infante about Gary Weiss in an attempt to facilitate a possible sale of the Emerald. I was under the impression that Gary Weiss was a potential buyer of the Emerald.

8. In late May, 2007, Gary Weiss requested the opportunity to take pictures of the Emerald, and offered to send his son, Gil Weiss, to California to inspect and take photographs of the Emerald.

9. On May 30, 2007, Mr. Diaz-Infante and I drove to San Jose and picked Gil Weiss up at the airport. The three of us went to breakfast, and then went to a warehouse to inspect and view the Emerald.

10. After visiting the Emerald, Mr. Diaz-Infante, Gil Weiss and I went to lunch.

11. At lunch, I realized that Gil and Gary Weiss were not potential buyers of the Emerald, but had heard that it was up for sale and wanted the opportunity to broker its sale. Gill Weiss then presented me with a 1/2 page contract regarding a broker relationship as to the Emerald.

12. This 1/2 page "agreement" did not contain any of the ordinary terms for an agreement I use in connection with the Emerald. In fact, I could not sign the "agreement" offered by Gil Weiss, as I am not the owner of the Emerald, and the insurance policy for the Emerald does not allow another person to take possession of the Emerald and still provide coverage.

13. I declined to sign the "contract", and told Gil Weiss that I would fax him the appropriate documentation if he truly wanted to try to broker a sale of the Emerald. Later that day, or the next day, I faxed the appropriate documents, but never heard back from Gil or Gary Weiss about them. I also mentioned to Gil Weiss that if he was able to broker a deal that was accepted, that closed and funded, and was for a sales price in excess of $25.0 million, a commission of 10% would be paid, but for anything less than $25 million, no commission would be paid.

14. The "contract" that Plaintiff has submitted in connection with this lawsuit appears to be the same as the "contract" I declined to sign on May 30, 2007. I never signed this contract. The signature thereon is not mine, was not made by me, nor did I authorize anyone to sign on my behalf. I have notified the appropriate authorities.

15. After lunch on May 30, 2007, Mr. Diaz-Infante and I drove Gil Weiss back to the San Jose airport.

16. After May 30, I did not hear from either Gil Weiss or Gary Weiss for several weeks.

17. In late May, I was introduced to Dione Tillman of Elohim Financial, Inc., and B&B Services, Inc. began negotiating with Elohim Financial, Inc. for an option to purchase the Emerald, as well as for it to act as the exclusive selling agent for the Emerald in the private market. Elohim has a potential deal for the sale of the Emerald valued at $75.0 million.

18. On or about September 13, 2007, Gary Weiss contacted Mr. Diaz-Infante by email. In this email, Gary Weiss wrote that he was getting ready to sell of the Emerald. This was a surprise to me, since I had not entered into any agreement or signed a contract with Gary Weiss or his company to engage them to sell the Emerald.

19. On or about September 24, 2007, Jewelry 47, Inc. filed the instant lawsuit, naming me as a defendant, and basing it claims on the "contract" containing my forged signature. This is nothing more than a fraud and an attempt to steal $7.5 million.

20. On or about September 27, 2007, Gil Weiss sent an email to Mr. Diaz-Infante containing statements which he falsely attributed to me and statements which were injurious to my reputation and character. This email also threatened Mr. Diaz-Infante with "legal consequences" if he did not say that I signed the "agreement."

21. I have read the affirmation of Jeffrey Downey dated September 21, 2007. In paragraph 2 of his affirmation, Downey states that I signed "a simple agreement" with Downey and Jewelry 47, Inc. through its principal, Gary Weiss in May 2007, and that I purposely dated it July 1, 2007. I never told him that. Indeed, in a recent conversation with Downey, he confirmed that I never told him this, but that this is what Gil Weiss told him. Plaintiff's instant application does not contain a declaration from Gil Weiss.

22. In paragraph 2 of the Downey Affirmation, it also states that I informed Downey that I would become the sole owner of the Emerald after July 1, 2007. This too is false.

23. Finally, I never had any intention of entering into any joint venture with plaintiff – that claim is simply absurd.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 2nd day of October, 2007,

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Larry Bregler

# DIAZ-INFANTE DECLARATION

Scott S. McKessy (SM-5479)
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022
(212) 521-5400
Attorneys for Defendant Larry Biegler

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEWELRY 47, INC., <br><br> Plaintiff, <br><br> v. <br><br> LARRY BIEGLER, DIONE TILLMAN and ELOHIM FINANCIAL, INC. <br><br> Defendants. | Case No.: 07-CIV-8272 (PAC) |

## DECLARATION OF MARCO DIAZ-INFANTE

MARCO DIAZ-INFANTE, declares as follows:

1.  I am a personal assistant to Larry Biegler. I am fully familiar with the facts set forth herein, and submit this declaration, pursuant to 28 U.S.C. § 1746, in opposition to plaintiff's application for the appointment of a receiver.

2.  I have been employed by Mr. Biegler for several years.

3.  On May 30, 2007, I drove to San Jose, California, with Mr. Biegler to pick up Gil Weiss from the airport.

4.  Mr. Biegler, Gil Weiss and I went to breakfast, then to a facility to examine a large emerald conglomerate (the "Emerald").

5. After observing the Emerald, Mr. Biegler, Gil Weiss and I went to lunch at a restaurant on the south side of San Jose.

6. During this meal, Gil Weiss presented a 1/2 page contract to Mr. Biegler and asked him to sign it.

7. Mr. Biegler read the proposed contract, stated that he did not feel comfortable signing it, in fact did not sign it, and passed it back to Gil Weiss.

8. At the end of the meal, Mr. Biegler and I drove Gil Weiss back to the airport.

9. This is the only meeting of which I am aware at which a representative of Jewelry 47, Inc. and Mr. Biegler were present.

10. In mid-September, Gary Weis contacted me via email. In that correspondence, Gary Weiss wrote that he was getting ready to sell the Emerald. This was a surprise to me, as I did not know that Mr. Biegler had signed any agreement with Gary Weiss, and when I asked Mr. Biegler about it, he confirmed that he had not.

11. On or about September 27, 2007, Gil Weiss sent me an email threatening me with "legal consequences" if I did not corroborate Gil Weiss's story that Mr. Biegler signed the agreement presented to him on May 30, 2007 during the lunch meeting. A copy of this email is attached hereto as Exhibit C. But as Gil Weiss knows, Larry Biegler never signed that agreement during or lunch meeting on May 30, 2007.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of October, 2007

Marco Diaz-Infante