UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

JEWELRY 47, INC.,

                      Plaintiff,    : **CIVIL ACTION NO. 07-CIV-8272 (PAC)**

     v.                                   :

LARRY BIEGLER and ELOHIM        :
FINANCIAL and DIONE TILLMAN    :

                      Defendants.

----------------------------------------------------------X

**DEFENDANT LARRY BIEGLER'S**
**MEMORANDUM OF LAW IN OPPOSITION TO APPOINTMENT OF RECEIVER**

REED SMITH
599 Lexington Avenue
New York, New York 10022
212-521-5400

Attorneys for Defendant
Larry Biegler

Defendant Larry Beigler respectfully submits this Memorandum of Law in opposition to plaintiff Jewelry 47, Inc.'s instant application for the appointment of a receiver pendante lite based upon a purported broker's agreement containing a forged signature.

## PRELIMINARY STATEMENT

A fraud is being perpetrated upon Mr. Beigler and this Court – there is no kinder, gentler way to say it. And this fraud is not of the ilk of a fraud in the inducement or fraud in the execution, but a much more serious fraud: someone forged Mr. Beigler's signature on the "broker's agreement" underlying plaintiff's complaint in attempts to steal $7.5 million. This fraud and this venue, however, were not well thought out as Mr. Biegler is not the owner of the subject Emerald, but rather title to the Emerald lies in B&B Services, Inc., and Mr. Biegler has never been in nor transacted any business within the State of New York – there is simply no jurisdiction over him in this forum. But the extortion does not stop with the claims against Mr. Biegler. Plaintiff also names herein Elohim Financial, Inc. and one of its principals, Dione Tillman, as defendants – Elohim Financial, Inc. is the potential buyer of the Emerald that B&B Services, Inc. has been negotiating with since May of this year. But why are they named as defendants herein? There are no substantive claims against them. And the only allegation relating to Mr. Tillman is that he purportedly entered into an agreement on the behalf of Elohim Financial, Inc., not individually, for the purchase of the Emerald. Most notably, plaintiff's papers are devoid of any written agreement executed by Elohim Financial, Inc. for the purchase of the Emerald.

So, with no substantive claims or allegations asserted against Mr. Tillman or Elohim Financial, Inc., why did plaintiff name them herein? The only apparent reason seems to be in attempts to chill the potential buyer of the Emerald in hopes of increasing pressure to pay off plaintiff. And what better way to do that than to seek the appointment of a receiver to take possession of the Emerald and oversee its sale? But plaintiff's shenanigans do not end with the present application. In a move that the late Judge Edward Weinfeld would have referred to as

"Chutzpah to the n$^{th}$ degree"[1] plaintiff or its counsel disseminated the following press release regarding this case:

> PRESS RELEASE
> September 25, 2007 at 3:00pm ***Judge Paul A . Crotty signed a Order today appointing a temporary receiver*** to oversee the sale of the [ ] Emerald
> \* \* \* \*
> For further questions regarding this story contact the law firm of Gordon & Gordon (718) 544 -7070.

*See* Exhibit A (emphasis supplied) to accompanying Declarations.[2]

So the questions remain: why would plaintiff name potential buyers of the Emerald without asserting any substantive claims? Why name the principal of the potential buyer when the only allegation is that he acted on behalf of the corporation? Why issue a press release containing misrepresentations as to what this Court has ordered? Why do plaintiff's claim a joint venture exists when, as a matter of law, it does not? Indeed, the answer to these questions only lead to one conclusion, plaintiff's instant action is a shakedown, is without merit and its instant application should be denied for each of the following reasons:

- Mr. Biegler never signed the agreement upon which plaintiff's entire complaint is based – someone forged his signature!

- Mr. Biegler does not own the Emerald, title lies in the name of a California corporation.

- This Court does not have personal jurisdiction over Mr. Beigler, he has never been to the State of New York and he does not transact any business here; Indeed, the only meeting Mr. Biegler had with a representative of plaintiff was in California.

- The Emerald is not in the State of New York, but located in a secure facility in California.

---

[1] Gemveto Jewelry Co., Inc. v. Jeff Cooper Inc., 568 F. Supp. 319 (S.D.N.Y. 1983), vacated, 800 F.2d 256 (Fed. Cir. 1986)

[2] Press Release can also be accessed on the Mass Media Distribution Newswire at http://www.mmdnewswire.com/judge-appoints-temporary-receiver-for-400-000-000-emerald-one-worlds-lrgest-2282.html

- ➤ Plaintiff has failed to name all necessary parties in this action: Jeff Downey is a party to the agreement upon which plaintiff purports to sue and must be named herein; also LLB Financial has possession of and a security interest in the Emerald.

- ➤ Beyond the forgery, plaintiff alleges, at best, a breach of a broker's agreement: the purported agreement is not a joint venture as plaintiff conclusorily claims (there is no expressed intent to form a joint venture, and no sharing of profits and losses);

- ➤ Plaintiff is at best a contract creditor with absolutely no interest in the Emerald whatsoever – not a situation that warrants the extreme remedy of the appointment of a receiver pendente lite.

Consequently, the instant application should be denied in all respects.

### RELEVANT FACTS

The Court is respectfully referred to the accompanying Declarations of Larry Biegler, executed October 2, 2007, Marcos Diaz-Infante, executed October 1, 2007, and Scott S. McKessy, executed October 2, 2007 in opposition to the instant application for a full recitation of the relevant facts.

### ARGUMENT

### PLAINTIFF IS NOT ENTITLED TO THE APPOINTMENT OF A RECEIVER PENDENTE LITE

The appointment of a receiver is an "extraordinary remedy and should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property." *Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir.1997); *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir.1988). Parties seeking such an appointment bear a "heavy burden to establish an actual need" for the receiver. *Meineke Discount Muffler Shops, Inc. v. Noto*, 603 F.Supp. 443, 444 (E.D.N.Y.1985). *See also Sycamore Realty Corp. v. Matone*, 40 A.D.3d 843, 836 N.Y.S.2d 241, (2 Dep't, 2007) (receivership is a "drastic remedy").

Here, plaintiff completely fails to carry its heavy burden to establish entitlement to the extraordinary remedy of the appointment of a receiver pendente lite. To begin with, the agreement upon which plaintiff bases its entire action was never executed by Mr. Biegler – the signature thereon is a forgery. Second, this Court does not have personal jurisdiction over Mr. Biegler, nor is the Emerald located in the State of New York. Third, plaintiff has absolutely no interest in the Emerald and, as a matter of law, does not have a joint venture agreement with Mr. Biegler. Fourth, plaintiff fails to name all necessary parties to this action as Jeff Downey is a party to the forged agreement and LLB Financial has a security interest in the Emerald and controls access to the Emerald. Finally, this is an equitable remedy and there is nothing equitable about appointing a receiver in this case – it is merely an inappropriate litigation tactic in attempts to stall a deal so plaintiff can shake down the parties for a pay-off.

**A. Mr. Biegler Never Signed The Broker Agreement – His Signature Is A Forgery**

The most egregious aspect of plaintiff's entire action is that it is solely based upon a document containing the forged signature of Larry Biegler. This is not something Mr. Beigler takes lightly, nor is it something he takes pleasure in arguing. But the fact remains that someone has forged Mr. Beigler's signature on the purported broker's agreement in attempts to steal $7.5 million. Biegler ¶ 14. As set forth in the accompanying Biegler and Infante Declarations, the first time either gentlemen ever saw the putative agreement was during a lunch meeting in California on May 30, 2007. At that time, Gil Weiss presented the 1/2 page agreement to Mr. Biegler for the first time. As this was far from the normal agreement for entering into such brokering arrangements, Mr. Biegler declined to sign the document but informed Gil Weiss that Mr. Beigler would send Gil Weiss a copy of the usual and customary agreement. Biegler ¶ 13; Infante ¶ 7. Mr. Beigler did; and plaintiff never signed it. Biegler ¶13.

That was the last Mr. Biegler ever saw of that document until it was presented to him in connection with this lawsuit. Biegler ¶¶ 12-14. And there can be no claims under a contract with a forged signature – the forgery renders the contract void *ab initio*. *Orlosky v. Empire Sec. Sys.*, 230 A.D.2d 401, 403, 657 N.Y.S.2d 840, 842 (3d Dep't 1997); *Oberlander v. Fine Care, Inc.*, 108 A.D.2d 798, 799, 485 N.Y.S.2d 313, 314 (2d Dep't 1985)(a forged contract is invalid in its entirety).

As plaintiff now seeks to use this forged document in attempts to gain an ill-gotten $7.5 million windfall, this fraud has been reported to the appropriate authorities who are now conducting an investigation into the matter. Biegler ¶14. It is also important to point out that neither the declaration of Jeff Downey or of Gary Weiss claim to have seen Mr. Biegler execute the purported agreement, but claim that Mr. Beigler purportedly signed it in late May 2007. Noticably missing from plaintiff's papers is a declaration of Gil Weiss.

With no claims against Mr. Biegler, the appointment of a temporary receiver is patently improper.

**B. There Is No Jurisdiction Over Mr. Beigler Or The Emerald**

In a diversity action, personal jurisdiction over a defendant is determined by the law of the forum state and it is the plaintiff who has the burden to demonstrate that jurisdiction is proper. *Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986). Here, plaintiff claims, in the most cursory of allegations, that there is jurisdiction here over Mr. Biegler because joint venture contract was executed in the State of New York." Complaint, ¶ 2. There is absolutely no support for this allegation in any of the papers submitted by plaintiff: not in the declarations; nor in the complaint itself. In fact, in the email message Gil Weiss sent to Marco Diaz-Infante

on September 27, 2007, Gil Weiss directly contradicts this allegation and claims that the "agreement" was signed during the lunch meeting on May 30, 2007 *in California*. *See* Exhibit C. How can plaintiff claim the "agreement" was executed in New York when it claims Mr. Beigler signed it in California? Plus, Downey lives in California and there are no allegations that he traveled to New York simply to execute the agreement.

Regardless, plaintiff's remaining claim that a portion of the contract was performed in this State is equally without merit. Indeed, plaintiff's own activities in New York cannot be relied on to establish jurisdiction over a non-resident defendant.

> It is well established ... that in a suit between an agent and his out-of state principal, a court cannot exercise jurisdiction over the defendant-principal based on the plaintiff-agent's own activities within the state.

*Stein v. Microelectronic Pkg., Inc.,* 1999 U.S. Dist. LEXIS 11375, 1999 WL 540443, *5 (S.D.N.Y. Jul. 26, 1999). In this regard, it is the defendant non-resident's "purposeful activity [here] . . . in connection with the matter in suit" that is determinative of jurisdiction under CPLR 302(a)(1)" *Longines-Wittnauer Watch Co. v Barnes & Reinecke*, 15 N.Y.2d 443, 457, 209 N.E.2d 68, 261 N.Y.S.2d 8 (1965). Here, Mr. Biegler has never been to the State of New York and has not engaged in any activity in the State of New York in connection with the purported "agreement." Biegler ¶ 3. Indeed, plaintiff makes no allegations to the contrary. There is simply no nexus between the State of New York and Mr. Biegler sufficient to confer jurisdiction over Mr. Biegler in this forum. *Success Mktg. Elecs. v. Titan Sec.*, 204 A.D.2d 711, 712, 612 N.Y.S.2d 451 (2 Dep't 1994)(holding that defendant did not transact business in New York when contract was negotiated by facsimile or mail, and all of the activities in New York relating to the contract were performed by the plaintiff).

### C. There Is No Joint Venture And Plaintiff Has No Interest In the Emerald

Even if the sole document supporting plaintiff's claim was not based upon a fraud, there is nothing about the document that creates and interest in the Emerald in favor of plaintiff, nor that could transform a simple agreement for potential broker fees into a joint venture. As mentioned earlier, the Emerald is owned by B & B Services, Inc., a California corporation. Biegler ¶4. Nothing in the putative agreement seeks to convey any interest in the Emerald to plaintiff – nor can or does plaintiff make any such allegations. And, as a general rule, receivers may only be appointed when the party seeking receivership has some "legally recognized right in [the] property [he wishes to seize] that amounts to more than a mere claim against defendant." 12 C. Wright & A. Miller, Federal Practice and Procedure, §§ 2983, at 17 (1973).

Plaintiff does not claim an interest in the Emerald and does not assert anything other than a mere claim for money damages.

Furthermore, no matter what contortions plaintiff attempt to apply to the purported "agreement", on its face it is nothing more than a broker's agreement. Apparently realizing this is fatal to its instant application, plaintiff does not argue it has, at best, a broker's agreement, but contends, in conclusory fashion and without any explanation as to how it reached its conclusion, that plaintiff had a joint venture with Mr. Beigler. It is unclear who decided to apply this moniker to plaintiff's claim, but some quick legal research would have saved all parties a lot of time and money.

It is well settled that, for a joint venture to exist under New York law: (1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of

property, financing, skill, knowledge, or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses. *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 67-68 (2d Cir.2003) (quoting *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 909 F.2d 698, 701 (2d Cir.1990)); *see also 580 Folsom Associates v. Prometheus Development Co.*, 223 Cal.App.3d 1, 15, 272 Cal.Rptr. 227 (1990)(under California law a joint venture must have (1) a joint interest in a common business, (2) an understanding that profits and losses will be shared, and (3) a right to joint control). Without the need for any extraneous references, the document upon which plaintiff bases its entire action, on its face, precludes it from being a joint venture under either New York or California law.

First, there is no provision for the sharing of the profits and losses. *In re Parmalat Securities Litigation*, -- F.Supp.2d --, 2007 WL 2263893 *22 (S.D.N.Y.2007)(one of the essential features of a joint venture is an agreement among the parties to share profits and losses from the undertaking); *Connor v. Great Western Sav. & Loan Assn.*, 69 Cal.2d 850, 863, 73 Cal.Rptr. 369, 447 P.2d 609 (1968). In fact, the "agreement" is so one sided that there is absolutely no downside for plaintiff – every expense plaintiff might incur is to be born by Mr. Biegler. This, alone, precludes the existence of joint venture and undermines plaintiff's instant application for the appointment of a temporary receiver.

Second, there is nothing in the "agreement" that evidences the parties' intent to be joint venturers – the "agreement" is completely devoid of any such indication, no matter how hard plaintiff attempts to contort it. This critical omission also negates any inference that the "agreement" is a joint venture.

Indeed, the "agreement" is, at best, a purported agreement for the payment of a broker's fee – and it is not even an exclusive broker's agreement at that. All plaintiff really attempts to allege is a purported breach of this "agreement." And this does not warrant the appointment of a temporary receiver. A provisional receiver should not be appointed in an action based only on a purported money debt. *Meurer v. Meurer*, 21 A.D.2d 778, 250 N.Y.S.2d 817 (1st Dep't 1964) ; *Rosen v. Braun*, 2 A.D.2d 654, 152 N.Y.S.2d 247 (4th Dep't 1956) ; *Fisher v. Meyerowitz*, 31 Misc. 2d 624, 220 N.Y.S.2d 920 (Sup 1961); *Ivey v. Housing Foundation of America, Inc.*, 73 F. Supp. 201, 205 (D. Pa. 1947)(an unsecured simple contract creditor has, in the absence of statute, no substantive right, legal or equitable, in or to the property of his debtor); *Mid-Delta Health Systems, Inc. v. Professional Trends, Inc.*, 2007 WL 2350265 * 2, (W.D.La.,2007)("'a receiver ordinarily will not be appointed at the insistence of a simple contract creditor, even if he demonstrates the inadequacy of his remedy at law...'" (quoting 12 C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure § 2983).

**D. Plaintiff Fails To Name All Necessary Parties To This Action**

This action, let alone the instant application, should not be allowed to proceed until plaintiff has named all indispensable parties in this action. Here, plaintiff's entire claim is based upon a purported anticipatory breach of a broker "agreement." Moving beyond the forgery issue, the parties to the "agreement" upon which plaintiff sues are: Larry Biegler; Jewelry 47, Inc. and Jeff Downey. Jeff Downey, however, is not named in this action. And "[i]t is well-established that a party to a contract which is the subject of the litigation is considered a necessary party." *Ryan v. Volpone Stamp Co.*, 107 F.Supp.2d 369, 387 (S.D.N.Y.2000); *Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F.Supp. 701, 707-08 (S.D.N.Y.1997). Plus, there

is no reason that plaintiff cannot name Downey herein – it was able to obtain a declaration from him to submit in connection with the instant application.

Also, as detailed in the Beigler Declaration, the Emerald is currently under the control of LLB Financial at a secure facility located in California. Pursuant to a loan from LLB Financial to B & B Services, Inc., LLB Financial obtained a security interest in the Emerald and is holding it as collateral for the loan to B&B Services, Inc. LLB Financial is an indispensible party to this action and the instant application seeking the appointment of a temporary receiver to, *inter alia*, take possession of the Emerald. As LLB Financial's rights in and to the Emerald will be affected by the relief sought by plaintiff in its instant application, it must be joined herein.

### E. The Equities Do Not Favor The Instant Application

Finally, the equities do not favor the appointment of a temporary receiver herein. To begin with, the document underlying plaintiff's entire case is a fraud. And plaintiff's actions leading up to this application do nothing but demonstrate plaintiff's bad faith herein: it names parties apparently only to force a settlement; it issues press releases that contain material misrepresentations concerning this Court's orders; and makes arguments that are deficient as a matter of law. Moreover, plaintiff has absolutely no interest in the Emerald – none! And yet, it seeks to impose one of the most drastic forms of preliminary relief: the appointment of a receiver, prior to its claims being tested in litigation, to take possession of the Emerald and govern its sale. Plaintiff has no rights or interest in the Emerald and no right to sell it.

Plus, the best plaintiff can allege is a breach of a broker's agreement – and not even an exclusive broker's agreement at that. Indeed, in the absence of a special agreement – which does not exist here – a broker, to recover a commission, must establish that he was the procuring

cause of the sale or transaction (11 NY Jur 2d, Brokers, § 122). Plaintiff does not claim to be the procuring cause of any sale herein, just that, if the Emerald is sold – to anybody, under any conditions – it wants a 10% commission. The "agreement" does not support such a binding and restrictive contortion. Moreover, plaintiff was not the procuring cause of any sale. B&B Services, Inc. had been negotiating with Elohim Financial, Inc. since May 2007 – well prior to any communications from plaintiff regarding Elohim Financial, Inc. Biegler ¶17.

There is simply nothing equitable about allowing plaintiff the remedy it seeks herein.

## CONCLUSION

The instant application should be denied in all respects.

Dated:  New York, New York
        October 2, 2007

**REED SMITH LLP**

By: _____
    Scott S. McKessy (SM-5479)
    599 Lexington Avenue
    New York, New York 10022
    (212) 521-5400

*Attorneys for Defendant*
Larry Biegler