**EXHIBIT "E"**

7A2GJEWC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JEWELRY 47, INC.,

               Plaintiff,

          v.                              07 CV 8272 (PAC)

LARRY BIEGLER, DIONE TILLMAN,
and ELOHIM FINANCIAL, INC.,

               Defendants.

------------------------------x
                                          New York, N.Y.
                                          October 2, 2007
                                          3:40 p.m.

Before:

                    HON. PAUL A. CROTTY,

                                          District Judge

                         APPEARANCES

GORDON & GORDON, P.C.
     Attorneys for Plaintiff
BY:  PETER S. GORDON

REED SMITH, LLP
     Attorneys for Defendant Larry Biegler
BY:  SCOTT STEPHEN McKESSY
     JOE M. TEIG

JULES MARTIN HAAS
     Attorney for Defendants Dione Tillman and Elohim Financial
```

```
7A2GJEWC
```

1              (Case called)

2              (In open court)

3         THE DEPUTY CLERK:  Will counsel please state their

4    appearances for the record.

5         MR. GORDON:  Peter S. Gordon, Gordon & Gordon, P.C.

6    Good afternoon, your Honor.

7         THE COURT:  Hello, Mr. Gordon.

8         THE DEPUTY CLERK:  And for the defendants?

9         MR. McKESSY:  Good afternoon, your Honor.  Scott

10   McKessy from Reed Smith representing Larry Biegler.  And this

11   is my colleague Joe Teig from the same firm.

12        THE COURT:  Good afternoon.

13        MR. HAAS:  Good afternoon, your Honor.  Jules Martin

14   Haas.  I'm appearing today for Mr. Tillman and Elohim

15   Financial.  I literally got these papers about an hour, two

16   hours ago, and I spoke briefly with Mr. Tillman.  So I'm

17   appearing here today on their behalf.  I have not formalized my

18   relationship with them, given the short period of time, but I

19   did want to come down today to today's hearing, and obviously,

20   with respect to my appearance, all defenses and jurisdictional

21   defenses, everything else are being preserved.

22        THE COURT:  Yes.  Have you filed a notice of

23   appearance?

24        MR. HAAS:  I haven't, your Honor.  I literally spoke

25   with this fellow an hour ago.

1       THE COURT: All right. And Mr. McKessy, I have your
2  papers here.
3       MR. McKESSY: Yes, your Honor.
4       THE COURT: The opposition to appointment of a
5  temporary receiver. I suppose you have a motion to dismiss as
6  well.
7       MR. McKESSY: It would be shortly coming thereafter,
8  your Honor. We too are operating not under quite the same time
9  constraints as Mr. Haas, but over the weekend and yesterday,
10 papers were just finished --
11      THE COURT: Mr. Haas, I don't mean to belabor you,
12 because I understand your situation, but could you tell me a
13 little bit about Mr. Tillman and Elohim Financial. Are they
14 California entities as well?
15      MR. HAAS: My understanding is -- and I can tell you
16 what I know, your Honor, which is very little. My
17 understanding is that they are California entities,
18 individuals. I understand that this transaction sort of took
19 place -- whatever was taking place seems to have taken place
20 outside of New York state. But really, with respect to all the
21 particulars with respect to Mr. Tillman, I really am not in a
22 position to make any representations to the Court. I'm not
23 comfortable enough, based on the short period of time that I
24 have had, to inquire as to this.
25      THE COURT: All right. That's fair enough. I won't

7A2GJEWC

1  press you further.
2         All right. Mr. Gordon, could you give me your side of
3  the story, please.
4         MR. GORDON: Yes. The defendant Biegler, through a
5  nonparty Jeff Downey, a California resident, had sought out
6  Jewelry 47 to place an emerald, which is the largest emerald in
7  the world at 840 pounds and 180,000 carats, promoted on eBay as
8  well as another promotion. After they sought out my client, he
9  had his son go out to California to visit and take photographs
10 of the emerald. He took photographs of the emerald along with
11 the certificates proving the value and so forth, placed it on
12 eBay.
13        The defendants Elohim Financial and Dione Tillman were
14 interested in purchasing it for a $19 million price. They
15 refused to bid on eBay and do the transaction through eBay. So
16 I was retained to prepare a contract of sale, which I have
17 done. It was forwarded out to Mr. Tillman and Elohim
18 Financial.
19        A few days after that contract was received by them,
20 they had alerted me that my client, Jewelry 47, despite in a
21 written agreement to that effect, did not have a right to sell
22 it. E-mails were corresponding between the defendant Biegler
23 through an agent, a Marco Diaz Infante, of his to my client
24 Jewelry 47, Inc., which indicated that there was a $75 million
25 deal that was going for the sale, that my client should sit

```
 1   tight.  And then there was rumblings about a consolation prize
 2   of I think about half a million dollars for Jewelry 47 to split
 3   with another finder, the nonparty Jeff Downey.
 4          At that point we moved as quickly as possible for the
 5   appointment of a temporary receiver to oversee the sale to
 6   ensure that my client receive the commission based upon the
 7   agreement, the joint venture agreement, which is attached to
 8   our complaint and part of the papers.
 9          After --
10          THE COURT:  The joint venture agreement is the one
11   that is signed by Mr. Biegler and Downey?
12          MR. GORDON:  Yes, and Gary Weiss.
13          THE COURT:  And Gary Weiss.  And Mr. Weiss is
14   Jewelry -- is he Jewelry 47?
15          MR. GORDON:  Yes, Jewelry 47, Inc.
16          THE COURT:  Now, what do you say about Mr. Biegler?
17   It says his signature is forged.
18          MR. GORDON:  Well, he had contacted me as soon as we
19   FedEx'd the papers before the order to show cause was proposed,
20   and he said that it was forged.  And at that point I secured an
21   affirmation from Gary Weiss, who was an eyewitness to the
22   signature.  I had also secured other samples of Mr. Biegler's
23   handwriting and was waiting for some type of appearance from
24   the defendants before I retained any type of handwriting expert
25   or so forth, which just occurred about an hour, hour and a half
```

1  ago. I'm ready to submit this to a Julia Bavaca, who is a
2  handwriting expert and has testified before in this court and
3  has been certified by this court.
4      With regard to the samples that I have, they are
5  Mr. Biegler's handwriting from March of '07 on a lease
6  agreement, as well as a purchase of sale agreement, and those
7  contracts have, in fact, been executed and gone through.
8      There's also a handwritten note. So those are the
9  samples along with the original agreement that I have, which,
10  if necessary, I will submit to a handwriting expert.
11      THE COURT: I think you're going to have to. Listen,
12  I saw someplace that you issued a press release.
13      MR. GORDON: Burton Pugach, who is a good friend and
14  he's somewhat of a celebrity, had helped me with the papers
15  here. And he has a press agent, because there's a movie called
16  Crazy Love about him. And that was done through, I believe,
17  his service. Dan Klores produced a movie Crazy Love about him
18  and his life.
19      THE COURT: Do you agree with me that the press
20  release is wrong?
21      MR. GORDON: Yes.
22      THE COURT: Completely wrong?
23      MR. GORDON: With regard to the appointment of a
24  temporary, yes.
25      THE COURT: Did you issue any corrective advertising?

1   MR. GORDON: No.
2   THE COURT: Did you remonstrate with Mr. Pugach about
3   issuing press releases?
4   MR. GORDON: I spoke to him, but he was in the
5   hospital for two days over the weekend. So I didn't want to --
6   THE COURT: So the record is very clear, we understand
7   that all I did was allow you to bring this matter on by order
8   to show cause. There's no receiver. Correct?
9   MR. GORDON: Yes, your Honor.
10   THE COURT: All right. Now, Mr. McKessy, what motions
11   do you want to make and what schedule do you want to be
12   entered?
13   MR. McKESSY: Well, your Honor, it's part of our
14   papers. One of the reasons why we're objecting and opposing to
15   the instant receiver, beyond the forgery issue, which your
16   Honor noted, is that there are issues of jurisdiction. Mr. --
17   THE COURT: I understand that.
18   MR. McKESSY: Okay. There's been a flurry of
19   e-mails -- faxes over the weekend and yesterday. I'm putting
20   it all together. If we could have two weeks to make our
21   motion, I think we could do it in that time. But there are
22   also some other issues to address, which actually go to the
23   subject matter jurisdiction.
24   Putting the forgery aside, on the agreement, the other
25   party to it is Jeff Downey. Jeff Downey is alleged to be a

7A2GJEWC

1  California citizen.  He is a California citizen.  He's living
2  in one of the homes that my client owns out there.  He's a
3  necessary party.  Why is he not named in here?  Well, if you
4  name him in here, there's no more diversity jurisdiction.
5           THE COURT:  Why is that?
6           MR. McKESSY:  Well, he's a California resident, and
7  everybody else is a California resident too.  Now they're on
8  opposite sides of the "v." if they're named as an additional
9  plaintiff.
10          THE COURT:  I thought that Mr. Weiss was a New York
11 resident.  Is that right?
12          MR. McKESSY:  Actually, Mr. Weiss is a New York
13 resident.
14          THE COURT:  And Jewelry 47, Inc., is a New York
15 corporation?
16          MR. McKESSY:  I believe so.  My understanding was
17 that --
18          THE COURT:  And the people on the other side are
19 California?
20          MR. McKESSY:  Yes.
21          THE COURT:  And who is the gentleman you say is
22 missing?
23          MR. McKESSY:  Mr. Downey.
24          THE COURT:  Mr. Jeff Downey.
25          MR. McKESSY:  Downey.

1           THE COURT:  He's a California resident too.

2           MR. McKESSY:  Yes.

3           THE COURT:  How does that destroy the diversity?

4           MR. McKESSY:  Well, if he's joined as plaintiff, which
5   he's on the contract as being an additional --

6           THE COURT:  Oh, I see.

7           MR. McKESSY:  He shares in the commission as
8   Mr. Gordon said that they are seeking.  So he's a necessary
9   party here, and so if he's joined as a plaintiff, we don't have
10  that --

11          THE COURT:  Okay.  I thought he was a defendant.  So I
12  didn't understand your point about --

13          MR. McKESSY:  Oh, I'm sorry, your Honor, I didn't make
14  that clear.  So there's a lot of issues about personal
15  jurisdiction beyond the personal jurisdiction issues we would
16  be raising.

17          THE COURT:  Now, do you know what the standard is
18  under the Federal Rules of Civil Procedure?  We look to CPLR --

19          MR. McKESSY:  Yes, your Honor.

20          THE COURT:  And this is a transaction -- I gather the
21  allegation is that you did business in New York?

22          MR. McKESSY:  The allegations regarding jurisdiction
23  are in paragraph 2 of the complaint, very conclusory.  They
24  say, one, that the agreement was executed in New York.  Well,
25  maybe Mr. Weiss signed the document in New York, but if you

1  believe what they say about when the document was executed by
2  Mr. Biegler, that occurs on May 30th back in California, and
3  the person who signs it is Jeff Downey, the California
4  resident. His declaration doesn't say that he flies to New
5  York to sign it. So I'm presuming that he signed it in
6  California. I could be wrong --
7        THE COURT: The emerald is in California?
8        MR. McKESSY: Yes. It's in a secure facility out
9  there. It's subject to a lien by LLV Financial, who has a
10 collateral security interest, and they actually control access
11 to it. And Mr. Biegler doesn't even own the emerald, your
12 Honor. It's owned by an entity that he works for, B&B
13 Services. And the title is attached. So beyond that, the only
14 other allegations about jurisdiction is that they say a portion
15 of the contract was performed in New York, and that's it. I'm
16 assuming that's --
17       THE COURT: What portion was to be performed in New
18 York?
19       MR. GORDON: That's where the eBay promotion and the
20 other promotional services were performed by Mr. Weiss. He
21 took all the documents and had everything placed on eBay.
22 That's where his office is. That's where he solicited bids.
23 There were over a thousand hits on that particular site. There
24 were many calls and inquiries to his office, to him about this
25 emerald, and they had a big promotion.

1   THE COURT: So what is your view of the contract here,
2   Mr. Gordon, that after the contract was signed, you were
3   empowered to start sales efforts?
4   MR. GORDON: That's right. We had --
5   THE COURT: And all your sales efforts were in New
6   York?
7   MR. GORDON: That's right.
8   THE COURT: And that's the basis for jurisdiction
9   here?
10  MR. GORDON: Well, and also that they came to us,
11  solicited us from New York to put this on. We didn't solicit
12  them to have this contract. They sought us out, as Jewelry 47
13  sells many items on eBay, and as a result of that reputation,
14  they came to us to put this on to attract the attention that
15  Jewelry 47 is able to do.
16  MR. McKESSY: Your Honor, actually, Jeff Downey
17  arranged the other party --
18  THE COURT: Mr. McKessy, you say you want two weeks?
19  Today is the 2nd. How long do you need to gather your papers
20  and make whatever motions are necessary?
21  MR. McKESSY: If I could do that in two weeks.
22  THE COURT: All right. Now, Mr. Haas, to the extent
23  you have similar motions, I want you to be proceeding on the
24  same time frame as Mr. McKessy.
25  MR. HAAS: Yes, your Honor.

7A2GJEWC

1  THE COURT:  So you'll be able to do it by the 16th as
2  well?
3  MR. HAAS:  We will, your Honor.
4  THE COURT:  All right.  Mr. Gordon, how much time do
5  you want to respond?
6  MR. GORDON:  Two weeks, your Honor.
7  THE COURT:  That will be the 30th.  So 16th for you,
8  Mr. McKessy to make your motions.  That would be two weeks.
9  Two weeks for response will be October 30th, and then a week
10 for your reply, Mr. McKessy, that will be November the 6th.
11 MR. McKESSY:  Yes, your Honor.
12 MR. HAAS:  And if I may, your Honor, subject to my
13 formalizing my relationship with the client during this period
14 of time.
15 THE COURT:  Of course.  Now, if you were not able to
16 formalize the relationship, tell whoever substitutes for you
17 that we have a motion schedule.
18 MR. HAAS:  Yes, your Honor.
19 THE COURT:  And I don't want to interrupt the motion
20 schedule.
21 MR. HAAS:  Yes, your Honor.
22 THE COURT:  So they're going to have to get on board
23 the train that's moving now.
24 MR. HAAS:  I understand.
25 THE COURT:  With motions to be made by the 16th,

7A2GJEWC

responses by the 30th and replies by the 6th so we can resolve this at the beginning.

Now, Mr. Gordon, I don't like to see orders that I have entered misconstrued in the paper by people who are not involved in the lawsuit. Now, is Mr. Pugach, is he an admitted attorney?

MR. GORDON: No, your Honor.

THE COURT: But he does work for you?

MR. GORDON: Yes. He --

THE COURT: Under your supervision?

MR. GORDON: Yes.

THE COURT: Well, I would suggest to you that you tell Mr. Pugach that he's not to issue press releases dealing with this lawsuit, and I hope I don't see again a press release which misconstrues what I did. I thought it was very clear here that I struck out the demand for security and insisted that you serve in accordance with the Federal Rules of Civil Procedure. And you yourself did not ask for the appointment of an interim temporary receiver. Your action is for receiver. Correct?

MR. GORDON: Yes, your Honor.

THE COURT: And I didn't grant that relief. Correct?

MR. GORDON: Yes, your Honor.

THE COURT: All right. Is there anything else to do today?

1   MR. GORDON: Your Honor, there is an issue. From what
2   my client understands, there is an imminent sale of this
3   emerald for, I believe, October 5th, and I would just like to
4   be apprised as to the status of the sale.
5   THE COURT: If they want to. If they want to
6   volunteer that information, they can. I'm not appointing a
7   receiver today. You haven't established any kind of basis for
8   relief, injunctive relief. I'm not going to appoint a
9   receiver. So if they want to tell you, they can. If they
10  don't want to tell you, they don't have to.
11  Do you want to tell him?
12  MR. McKESSY: Your Honor, I'm not sure of the status
13  of the -- again, I'm operating at a little more leeway than
14  Mr. Haas, but I was able to put together our papers to address
15  the instant application, and I will discuss it with my clients.
16  THE COURT: Okay. That's the answer. Now, if you
17  want any more relief, injunctive relief, you're going to have
18  to move pursuant to rule 65 for such relief as you deem is
19  appropriate, but right now I think the best way to address this
20  case is on the jurisdictional grounds that have been raised by
21  the defendants and also whether all the necessary parties are
22  here before we proceed further in this matter.
23  Anything else?
24  MR. McKESSY: No, your Honor.
25  THE COURT: Thank you very much.

MR. GORDON: Thank you, your Honor.

MR. HAAS: Thank you.

o0o