

Not Reported in F.Supp.                                                                    Page 1

Not Reported in F.Supp., 1994 WL 440719 (S.D.N.Y.)

**(Cite as: 1994 WL 440719 (S.D.N.Y.))**

**C**
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
CHINA RESOURCE PRODUCTS (USA), LTD.,
Plaintiff,
v.
CHINA DISTRIBUTORS, INC., d/b/a Husky
Forklift Products, Defendant.
**No. 92 CIV. 7119 (SWK).**

Aug. 16, 1994.

Ventura, Ribeiro, Landgrebe & Tang, New York
City, by Agostinho J. Ribeiro, for plaintiff.

Satterlee Stephens Burke & Burke, New York City,
by Dan G. Gurfein, Abrahams, Kaslow & Cassman,
Omaha, NE, by Aaron D. Weiner, for defendant.

MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

**\*1** In this breach of contract and fraud action,
plaintiff China Resource Products (U.S.A.), Ltd.
("China Resource") seeks compensatory damages in
the amount of $210,814.55, plus interest, and
punitive damages in the amount of $500,000.00
from defendant China Distributors, Inc., d/b/a
Husky Forklift Products ("China Distributors").
Defendant now moves for dismissal of the
complaint, pursuant to Federal Rule of Civil
Procedure 12(b)(2), for lack of personal jurisdiction
or, pursuant to Federal Rule of Civil Procedure
12(b)(3), for improper venue. In the alternative,
defendant moves to transfer this case to the United
States District Court for the District of Nebraska,
pursuant to 28 U.S.C. § 1404(a). For the reasons
set forth below, China Distributors' motion to
dismiss for lack of personal jurisdiction, pursuant to
Federal Rule of Civil Procedure 12(b)(2), is granted.
[FN1]

BACKGROUND [FN2]
China Distributors is a Nebraska corporation which
sells casted and forged metal parts, precision gears
and machinery manufactured in China. According
to N. Dale Washburn ("Washburn"), defendant's
founder and chief operating officer, China
Distributors purchased forktrucks, forks and
forktruck parts from China National Machinery
Import & Export Corporation, Beijing Branch
("Beijing Machinery"), a licensed Chinese
import/export company, [FN3] from approximately
1987 to 1991. China Distributors maintains that,
during this time, all of its negotiations with Beijing
Machinery were held in China, and all agreements
between China Distributors and Beijing Machinery
were signed in China.

In the beginning of its relationship with Beijing
Machinery, China Distributors purchased only small
quantities of goods. China Distributors would
exchange letters of credit, fully funded (an equal
amount of cash was on deposit) at a Hong Kong
bank, for shipping documents from Beijing
Machinery, which entitled China Distributors to
delivery of the goods imported from China. When
the number of purchases increased, China
Distributors established secured letters of credit at
several banks in the United States.

Eventually, China Distributors and Beijing
Machinery encountered financing problems. As its
purchases increased, China Distributors needed
more time for payment so that it could first resell
the goods. However, the Central Bank of China's
restrictions precluded Beijing Machinery from
accepting China Distributors' large orders or from
extending the payment time. As a result, in order
to circumvent this problem, Beijing Machinery
suggested that the two companies change their
methods of exchanging shipping documents and
payments, and that the shipping documents be
delivered to a Chinese affiliate rather than to a
United States bank. Under the new arrangement,

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                Page 2

Not Reported in F.Supp., 1994 WL 440719 (S.D.N.Y.)

**(Cite as: 1994 WL 440719 (S.D.N.Y.))**

Beijing Machinery would send the shipping documents to China Resource, a New York corporation that produces spices, who would then receive payment from China Distributors in the United States. This system would enable China Distributors to order more goods without letters of credit from a bank.

A. The March Agreement

**\*2** On or about March 8, 1990, China Resource and China Distributors negotiated and reached an agreement in China (the "March Agreement"). Describing China Resource as an agent of Beijing Machinery, the March Agreement stated that China Resource

> has been engaged ... for the single purpose of overcoming numerous obstacles encountered in the flow of paperwork between [China Distributors] and [Beijing Machinery]. As agent, [China Resource] will only receive documents from [Beijing Machinery] and for exchanging these documents when provided the proper bank instrument by [China Distributors]. [China Resource] has no responsibility for manufacturing, quality, pricing, or delivery schedules.

March Agreement, annexed to the Washburn Aff. as Exh. "D."

The Agreement also provided that the shipping documents would be conveyed by Beijing Machinery to China Resource in New York. China Resource would then inform China Distributors that the documents had arrived so that China Distributors could make payment with a check post-dated 60 days to receive the papers. Under the March Agreement, China Resource did not provide a line of credit to China Distributors.

B. The November Agreement

On November 20, 1990, China Resource and China Distributors signed a second agreement (the "November Agreement"). This agreement provided:

> Whereas Resources is an affiliate of Beijing Machinery Import and Export Corp. ... whereas [China Distributors] and Resources desire to enter into an agreement whereby Resources will provide [China Distributors] a credit line of $250,000 USD for the purchase of forktrucks ...
> 1) [China Distributors] agrees to increase its capital contribution, including inventory of forktrucks by $250,000 USD
> 2) Resources agrees that contemporaneously with this agreement it has executed an agreement with Beijing Machinery I/E Corp. to match [China Distributors'] capital injection with an equivalent credit line of $250,000 USD for the exclusive use of [China Distributors].

November Agreement, annexed to the Wang Aff. as Exh. "A".

The parties disagree as to how the November Agreement was executed and what the terms of the November Agreement meant. China Resource's sales manager, Hui Ping Wang ("Wang"), claims that he was involved in all aspects of the negotiations of the November Agreement, which he claims he executed in New York. Wang Aff. at ¶ ¶ 3, 4. Wang maintains that the negotiations occurred through telephone calls, faxes and other correspondence among China Resource, China Distributors and Beijing Machinery in New York, Nebraska and China, respectively. *Id.* at ¶ 3. Wang further alleges that China Distributors sought China Resource's help when Beijing Machinery was unable to extend credit to China Distributors or increase its payment time. *Id.* at ¶ 13. He maintains that, under the November Agreement, China Resource was to extend to China Distributors a credit line of $250,000 to allow China Distributors to buy goods supplied by Beijing Machinery from China Resource. China Distributors was to provide checks post-dated 75 days to China Resource and would then receive the shipping documents.

**\*3** China Distributors presents a different scenario of the execution and intent of the disputed November Agreement. Alleging that the Agreement was signed in China, Washburn asserts that he has "never had more than 20 words with Mr. Wang," Washburn Supp.Aff. at ¶ 3, and that Wang was not directly involved in the November

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                        Page 3

Not Reported in F.Supp., 1994 WL 440719 (S.D.N.Y.)

**(Cite as: 1994 WL 440719 (S.D.N.Y.))**

negotiations in any way. *Id.*

Washburn also claims that he was told that the November Agreement merely formalized the existing relationship among China Distributors, Beijing Machinery and China Resource. Washburn Aff. at ¶ 26. In Washburn's opinion, the November Agreement provided as follows. First, the Agreement provided that China Distributors would increase its total orders. *Id.* at ¶ 27. Second, China Resource and Beijing Machinery would agree "to match [China Distributors'] capital injection," which Washburn interprets as meaning that Beijing assented to the increased orders. *Id.* Third, Washburn contends that the "credit line" supposedly established by China Resource was not really an extension of credit, but rather, "a reference to the 'ordering limit' [China Resource] 'obtained' from Beijing Machinery." *Id.* at ¶ 28. In fact, no credit was extended by China Resource, which remained merely a conduit for documents. *Id.* Fourth, the November Agreement extended the post dates on the checks. *Id.*

In addition, China Distributors maintains that, after the November Agreement, the parties retained the same relationship that they had under the March Agreement. Thus, despite the November Agreement, China Resource did not buy goods from Beijing Machinery, sell goods to China Distributors or extend credit. All payments from China Distributors were for the benefit of Beijing Machinery and not China Resource, which provided the exchange service free of charge. Thus, China Resource's sole role remained as the deliverer of the shipping documents. Finally, China Distributors alleges that the only change initiated by the November Agreement was the extension of the post dates on the checks from 60 to 75 days, and that under both the March and November Agreements, the only contact it had with China Resource or the State of New York was through the mailings, telephone calls and telexes dealing with the exchange of documents.

C. The Dispute and Litigation

In late 1990 and early 1991, problems developed in

the business relationship between China Distributors and Beijing Machinery. China Distributors claims it received large amounts of defective goods from Beijing Machinery, and that Beijing Machinery also failed to fulfill its promises to (1) buy General Electric controllers from China Distributors and (2) provide technical support for the goods in the United States.

Thereafter, in April, July, August and October of 1991, Washburn travelled to China and representatives from Beijing Machinery journeyed to Nebraska to settle these problems. China Distributors maintains that, except for making some phone calls about the technical assistance problem and travelling to Nebraska at Beijing Machinery's request, China Resource and its sales manager, Mr. Wang, were not involved in the discussions of the problems.

*4 Following the breakdown of negotiations, China Distributors stopped payment on several checks to China Resource totalling $210,814.55. On September 25, 1992, the instant action was filed. The Complaint asserts two causes of action: (1) breach of contract as a result of China Distributors' action in stopping payment on checks due and payable (First Cause of Action); and (2) fraud by China Distributors in (a) entering into the November Agreement with no intention of honoring its obligations therein and (b) writing checks with no intention of honoring them, but rather, with the intention of inducing China Resource to send goods to China Distributors (Second Cause of Action). Specifically, China Resource claims that China Distributors breached its November Agreement with China Resource, and that it never intended to pay for goods sent by China Resource to China Distributors. China Resource asserts further that, when questioned, China Distributors failed to explain why payment on the checks had been stopped. China Resource also alleges that it made several requests for payment which were not honored.

China Distributors counters that only Beijing Machinery made any requests for payment, and that the present lawsuit is plaintiff's first request for any

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                    Page 4

Not Reported in F.Supp., 1994 WL 440719 (S.D.N.Y.)

**(Cite as: 1994 WL 440719 (S.D.N.Y.))**

payments. Citing its payments for goods received both before and after the defective goods, defendant maintains that it always intended to honor and did honor its obligations under the contract. China Distributors indicates further that it incurred vast repair and replacement bills and has had continuing problems with the forktrucks at issue.

China Distributors now moves for an order dismissing the complaint pursuant to (1) Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or (2) Federal Rule of Civil Procedure 12(b)(3) for improper venue. Alternatively, defendant moves for an order transferring this case to the United States District Court for the District of Nebraska pursuant to 28 U.S.C. § 1404(a). Specifically, China Distributors maintains that personal jurisdiction is lacking in this forum under New York Civil Practice Laws and Rules ("NYCPLR") § 302(a)(1) because China Distributors does not "transact business" in New York. China Distributors contends further that China Resource's allegations of fraud are insufficient to create personal jurisdiction under § 302(a)(3)(i). In the alternative, China Distributors claims that venue is improper because (1) this Court lacks personal jurisdiction over China Distributors and (2) the significant events giving rise to China Resource's claim did not occur in New York. Citing convenience to the witnesses, hardship on the parties and the public interest, China Distributors moves to transfer this action to Nebraska.

China Resource opposes the motion, arguing that personal jurisdiction is proper under NYCPLR §§ 302(a)(1) and 302(a)(3)(i), as China Distributors has often engaged in business transactions with China Resource in the State of New York, and has often solicited business from China Resource here. China Resource also asserts that venue is proper.

                    DISCUSSION
I. Personal Jurisdiction

A. Standard of Law

**\*5** China Distributors moves, pursuant to Federal Rule of Civil Procedure 12(b)(2), for an order

dismissing the complaint for lack of personal jurisdiction. In a federal diversity action, it is well-established that "the amenability of a foreign corporation to suit in a federal court ... is determined in accordance with the law of the state where the court sits...." *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 233 (2d Cir.1963). Thus, this Court must look to New York State law in deciding whether dismissal is warranted here.

In addition, if an evidentiary hearing has not been held, the non-movant, to survive a motion to dismiss for lack of personal jurisdiction, need only present *prima facie* evidence of personal jurisdiction, and the pleadings and affidavits will be viewed in the light most favorable to him. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985); *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 768 (2d Cir.1983).

B. Personal Jurisdiction Under NYCPLR § 302(a)(1)

Section 302(a)(1) of the New York Civil Practice Law and Rules states:

   [A] court may exercise personal jurisdiction over any non-domiciliary [who] ... (1) transacts any business within the state or contracts anywhere to supply goods or services in the state.

To establish personal jurisdiction under 302(a)(1), "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 14, 209 N.E.2d 68 (1965) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)), *cert. denied,* 382 U.S. 905 (1965). When examining whether the defendant purposefully availed itself of such a privilege, the Court should consider "the totality of defendant's activities within the forum." *Citicorp Int'l Trading Co. v. Western Oil & Refining Co.,* 708 F.Supp. 86, 88 (S.D.N.Y.1989) (quoting *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 261 N.Y.S.2d at 18 & n. 5). In addition,

   the plaintiff's claim must arise from the business

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                      Page 5

Not Reported in F.Supp., 1994 WL 440719 (S.D.N.Y.)

**(Cite as: 1994 WL 440719 (S.D.N.Y.))**

transacted. This requires a showing that the cause of action is 'sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business, and to subject the defendants to suit in New York.'
*Wilhelmshaven Acquisition Corp. v. Asher,* 810 F.Supp. 108, 112 (S.D.N.Y.1993) (quoting *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d at 59).

China Resource claims that this Court has personal jurisdiction over China Distributors based on defendant's New York business transactions, as evidenced by (1) China Distributors' phone calls, faxes and other correspondence to New York; (2) plaintiff's execution of the November Agreement in New York; and (3) defendant's payments mailed to New York. In response, China Distributors claims that this Court lacks personal jurisdiction, as China Distributors did not have sufficient contacts with New York to meet the "transacts any business" prong of NYCPLR section 302(a)(1). The Court agrees. Even when the pleadings and affidavits are viewed in the light most favorable to the plaintiff, China Resource fails to establish a *prima facie* case of personal jurisdiction.

1. General Business Contacts

*6 As an initial matter, China Distributors has no general business contacts with New York. Specifically, China Distributors has its principal place of business in Nebraska and has neither a corporate office nor any corporate employees in New York. Washburn Aff. at ¶¶ 2, 35. China Distributors has no books, records or bank accounts in New York and is not registered to do business in New York. *Id.* at ¶ 35. In addition, no one from China Distributors ever entered New York regarding its business with China Resource. *Id.* at ¶ 30.

2. Mail, Faxes and Telephone Calls

China Resource contends, however, that this Court has personal jurisdiction over China Distributors, as China Distributors engaged in telephone calls, sent faxes and mailed documents to New York.

Although, as China Resource indicates, China Distributors did place telephone calls, send faxes and mail correspondence between Nebraska and New York during the negotiating of the November Agreement, such contacts, regardless of their number, do not subject a non-domiciliary to personal jurisdiction in New York.

"Courts have consistently held that the mere telephoning or mailing of orders to a New York seller by an out-of-State buyer does not subject the buyer to *in personam* jurisdiction under § 302.... Nor is this conclusion changed by the ... number of phone calls." *Lichtenstein v. Jewelart, Inc.,* 95 F.R.D. 511, 514 (E.D.N.Y.1982) (citations omitted). For example, in *Wilhelmshaven Acquisition Corp. v. Asher,* 810 F.Supp. at 112, several defendants, from locations in London, participated in negotiations and other correspondence with Wilhelmshaven, which was located in New York. *Id.* at 110. The discussions involved Wilhelmshaven's purchase of a German petroleum refinery. *Id.* Over a period of several months, the parties engaged in numerous telephone calls and mailings between New York and London. *Id.* at 110-11. Also, a televideo conference was held where the images of Wilhelmshaven representatives were transmitted to London, and the images of the defendants were transmitted to New York. *Id.* at 110.

The Court in *Wilhelmshaven* found that these specific activities failed to establish personal jurisdiction over the defendants.
> Generally, telephone and mail contacts do not provide a basis for jurisdiction under CPLR § 302(a)(1) unless the defendant 'projected' himself by those means into New York.... In this action, contract negotiations were simultaneously taking place in New York and London. The center of gravity of the transaction was an oil refinery in Germany. Defendants' correspondence, telephone calls and telefax transmissions did not project them into events taking place in New York.
*Id.* at 112-13 (citations omitted); *see also Galgay v. Bulletin Co.,* 504 F.2d 1062, 1064-66 (2d Cir.1974) (refusing to find personal jurisdiction in

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                                      Page 6

Not Reported in F.Supp., 1994 WL 440719 (S.D.N.Y.)

(Cite as: 1994 WL 440719 (S.D.N.Y.))

New York despite the fact that non-domiciliary defendant made negotiating phone calls to New York, plaintiff executed the agreement in New York, non-domiciliary arranged to have the goods carted from New York and choice of law clause provided that New York law would govern); *PaineWebber Inc. v. Westgate Group, Inc.,* 748 F.Supp. 115, 119 (S.D.N.Y.1990) (personal jurisdiction lacking in New York despite defendant's frequent telephone calls and telecopies to New York); *Empresa Nacional Siderurgica, S.A. v. Glazer Steel Co.,* 503 F.Supp. 1064, 1065-66 (S.D.N.Y.1980) (placing an order by phone calls and telexes to New York fails to establish personal jurisdiction under section 302, regardless of the number of such contacts); *Rainbow Indus. Prods. v. Haybuster Mfg., Inc.,* 419 F.Supp. 543, 546 (E.D.N.Y.1976) (letters and phone calls from Nebraska to New York insufficient to establish personal jurisdiction under section 302); *J.E.T. Advertising Assocs. v. Lawn King, Inc.,* 84 A.D.2d 744, 443 N.Y.S.2d 745, 747 (2d Dep't 1981) (no personal jurisdiction where contract was negotiated by telephone and mail).

*7 In the present case, China Resource contends that personal jurisdiction is warranted, as the negotiations for the November Agreement were facilitated by telephone calls, faxes and other correspondence between China, Nebraska and New York. Assuming this is true, however, China Distributors' correspondence, telephone calls and telexes to New York during the negotiations did not project China Distributors into any ongoing events that were taking place in New York. In fact, the contract under negotiation involved the shipment of goods between Beijing and Nebraska. Thus, the phone calls and other correspondence are insufficient to confer personal jurisdiction over China Distributors in this forum. [FN4]

The two cases relied on by China Resource in support of its argument that jurisdiction can be based on phone calls, letters and faxes, are easily distinguished. In *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970), defendant Franklyn, a California resident, sent a letter to a New York

auctioneer indicating his interest in a certain painting. *Id.* at 338. Later, Franklyn called the auctioneer in New York to establish an open telephone line between California and the auction room so that he could directly participate in the New York auction. *Id.* During the auction in New York, Franklyn, who was in California, was able to receive and transmit bids to the auctioneer through an employee of Parke-Bernet, who was physically present in New York and acted as Franklyn's agent during the auction. *Id.* In light of these facts, the *Parke-Bernet* court found personal jurisdiction over Franklyn because he had purposefully "projected" himself into a New York auction through an open telephone line that allowed him to receive and make bids. *Id.* at 340.

In the present case, however, China Distributors did not participate in any activity that was centered in New York. Unlike Franklyn, China Distributors did not (1) initiate contact with a New York plaintiff; (2) engage in any specific New York activity; (3) have any agent physically present in New York; or (4) project itself into a specific business transaction that was located in New York. Thus, personal jurisdiction over China Distributors cannot lie based on *Parke-Bernet.*

Similarly, although numerous phone calls were found to confer jurisdiction in *Otterbourg, Steindler, Houston & Rosen, P.C. v. Shreve City Apartments Ltd.,* 147 A.D.2d 327, 543 N.Y.S.2d 978, 981 (1st Dep't 1989), that case is also distinguishable. In *Otterbourg,* the defendants sold an apartment complex that they owned in Louisiana to Nest Associates, a New York partnership. *Id.* at 979. Nest Associates subsequently filed a Chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York. *Id.* The defendants then hired plaintiff law firm Otterbourg, Steindler, Houston & Rosen, P.C. to represent their interests in the bankruptcy proceeding. *Id.* Otterbourg later sued in New York to recover fees owed for services rendered. When the defendants moved to dismiss for lack of jurisdiction, the court held that:

*8 [D]efendants did more than merely retain plaintiff. They communicated with plaintiff by

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                    Page 7

Not Reported in F.Supp., 1994 WL 440719 (S.D.N.Y.)

**(Cite as: 1994 WL 440719 (S.D.N.Y.))**

means of at least 93 telephone calls, many of which were originated by them, as well as by letters sent by them into the state. In addition to these letters and telephone calls, they participated in settlement negotiations relating to the pending legal proceedings by telephone conference calls with representatives of Nest Associates and an open telephone line into a meeting in New York. They settled various aspects of the bankruptcy proceedings pending in New York, entering into an agreement which provided not only that it was to be governed by the laws of the State of New York but also that defendants were to make payments to Nest Associates in New York.... These various activities ... demonstrate ... [defendants'] engagement in purposeful activity in this state in connection with matters involved in this lawsuit.

*Id.* at 981. Jurisdiction in *Otterbourg* was thus based on contacts clearly more substantial than the letters and calls made by China Distributors in the case at hand. Accordingly, China Resource clearly cannot rely on *Otterbourg* to establish personal jurisdiction over China Distributors in this forum.

3. China Resource's Performance and China Distributors' Payments Under the Agreement

China Resource next argues that its signing and executing of the November Agreement in New York establishes personal jurisdiction over China Distributors, who signed the agreement in China. The Court disagrees.

In the present case, the November Agreement was executed by China Distributors in China and then given to Beijing Machinery. Thus, the fact that Beijing Machinery may have sent the contract to New York for China Resource to sign is not an act that may be attributed to China Distributors for jurisdictional purposes. Rather, it was "purely fortuitous," *see Galgay v. Bulletin Co.,* 504 F.2d at 1065, that the signature was affixed by the plaintiff in New York. As the defendant is the party who must be found to have transacted business in this forum, the plaintiff's signing and executing of the contract in New York are irrelevant. *Id.* at 1065; *see also J.E.T. Advertising Assocs. v. Lawn King,*

*Inc.,* 443 N.Y.S.2d at 747 (no jurisdiction where "[a]ll of the New York activities relating to the contract were performed by plaintiff and cannot be attributed to defendant.").

China Resource's additional arguments that (1) actual performance of the November Agreement took place in New York; and (2) it performed activities in New York for China Distributors' benefit are similarly unpersuasive. First, China Resource cites no support for its assertion that "[d]efendant's payment in New York constitutes actual performance of the contract, in that, but for the defendant's payment in New York, the transaction could not have been completed." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, or Alternatively to Transfer ("Pl.Mem.") at 12. While it is true that, as plaintiff suggests, performance may be more determinative of jurisdiction than the negotiation and execution of a contract, "[t]he mere fact that the payments of money were due and made in [New York] is insufficient to confer jurisdiction as this does not constitute a purposeful act or the transaction of business within CPLR 302 (subd. (a), par. 1)." *Pacific Concessions, Inc. v. Savard,* 75 Misc.2d 219, 347 N.Y.S.2d 484, 486 (Sup.Ct., Monroe Co.1973) (citations omitted); *see also American Recreation Group, Inc. v. Woznicki,* 87 A.D.2d 600, 448 N.Y.S.2d 51, 52 (2d Dep't 1982) (no jurisdiction where defendant signed a promissory note that was payable in New York, as such payment is not "contract[ing] anywhere to supply goods or services in the state").

*9 Second, personal jurisdiction cannot be based on a claim that the plaintiff performed activities in New York that were beneficial to the defendant. Although the record is unclear, China Resource maintains that it performed activities in New York for China Distributors' benefit by sending documents from New York to Nebraska in order to effect delivery of the goods, and also by depositing checks received from China Distributors into China Resource's New York bank. Wang Aff. at ¶ 7. Under *PaineWebber Inc. v. Westgate Group, Inc.,* 748 F.Supp. at 119, however, the activities performed by China Resource in New York to

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                Page 8

Not Reported in F.Supp., 1994 WL 440719 (S.D.N.Y.)

**(Cite as: 1994 WL 440719 (S.D.N.Y.))**

benefit China Distributors cannot be relied upon to establish jurisdiction over China Distributors in this forum.

In *PaineWebber Inc. v. Westgate Group, Inc.,* 748 F.Supp. at 117, the non-domiciliary defendant made numerous phone calls and sent faxes and telecopies to PaineWebber's New York office. *Id.* Finding that the defendant had not transacted business in New York, however, the Court in *PaineWebber* noted that it must look at the activities of the defendant, not the plaintiff, in New York, and that "[u]nder CPLR 302 neither an agent nor an independent contractor's activities are to be attributed to the non-domiciliary defendant...." *Id.* at 119 n. 3.

Accordingly, in light of *PaineWebber,* the relevant focus is what China Distributors did in New York in connection with the cause of action, and not what services China Resource provided. As China Distributors did not have sufficient contacts with New York to warrant a finding that it "purposefully availed itself of the privilege of doing business in New York," Pl.Mem. at 15, [FN5] personal jurisdiction cannot be conferred on this basis. [FN6]

C. Personal Jurisdiction Under CPLR §§ 302(a)(3)(i) and (ii)

Under NYCPLR §§ 302(a)(3)(i) and (ii), the Court may exercise personal jurisdiction over any non-domiciliary who in person or through an agent:

commits a tortious act without the state causing injury to person or property within the state ... if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

Under NYCPLR 302(a)(3), the plaintiff must make a *prima facie* showing of jurisdiction in order to survive a motion to dismiss. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d at 57.

China Resource contends that this Court has personal jurisdiction under CPLR §§ 302(a)(3)(i) and (ii), as China Distributors committed a fraud within New York State. Specifically, in its complaint, China Resource alleges that China Distributors committed fraud by entering into an agreement with China Resource with no intention of performing its duties under the agreement, and by writing checks which the defendant had no intention of honoring, but which were written to induce China Resource into delivering the goods. Complaint at ¶ ¶ 18, 20. China Resource also alleges that it relied to its detriment on the defendant's misrepresentations. *Id.* at ¶ 19.

*10 China Distributors counters that it always intended to perform and did perform under both Agreements, and that it made payments on goods received both before and after the allegedly defective goods were delivered. Washburn Aff. at ¶ 33. China Distributors thus maintains that China Resource's conclusory allegations of fraud fail to support even a *prima facie* case of jurisdiction under NYCPLR 302(a)(3)(i) or (ii). The Court agrees.

1. Transforming Contract Claims Into Tort Claims

It is well settled that allegations that a defendant did not intend to perform under a contract fail to support a claim of fraud. *See Value Time, Inc. v. Windsor Toys, Inc.,* 700 F.Supp. 6, 6 (S.D.N.Y.1988) (allegation that Value Plus intended to breach contract does not state a claim for fraud). If the fraud claim is "simply a reiteration of the contract claim," the former will be dismissed. *Id.* at 7; *see also Amigo Foods Corp. v. Marine Midland Bank-New York,* 39 N.Y.2d 391, 384 N.Y.S.2d 124, 127, 348 N.E.2d 581 (1976) ("We find no merit in the additional argument that a breach of a contract constitutes a tortious act and may form a basis for long-arm jurisdiction under CPLR 302 (subd. [a], pars. 2, 3).").

For example, in *Cranston Print Works Co. v. Brockmann Int'l A.G.,* 521 F.Supp. 609 (S.D.N.Y.1981), a Rhode Island corporation doing business in New York sued defendant

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                          Page 9

Not Reported in F.Supp., 1994 WL 440719 (S.D.N.Y.)

**(Cite as: 1994 WL 440719 (S.D.N.Y.))**

non-domiciliaries, claiming that the defendants agreed to buy fabric and pay through letters of credit at a North Carolina bank. *Id.* at 611. The plaintiff sued under both breach of contract and conspiracy to defraud theories, alleging that the defendants made certain misrepresentations in New York. *Id.* Noting that various courts have "rejected such efforts to convert a contract action into a tort claim of fraud based upon just such an allegation that a contracting party never intended to fulfill its promise," the Court dismissed the fraud claim. *Id.* at 614. The Court rejected "Cranston's attempt to convert this to a tort claim ... based upon the additional naked assertion that [defendant], in furtherance of the alleged conspiracy among defendants, never intended to perform as it promised to do...." *Id.*

Similarly, in *Stanat Mfg. Co. v. Imperial Metal Finishing Co.,* 325 F.Supp. 794 (E.D.N.Y.1971), the plaintiff alleged that "at the time of the renegotiation of the payment terms defendant never intended to pay the forty percent upon delivery and, in effect, committed a fraud by inducing shipment on the basis of a promise never intended to be kept." *Id.* at 795. The Court, however, was not convinced: "If a plaintiff could, merely by alleging that a contracting party never intended to fulfill his promise, create a tortious action in fraud, there would be no effective way of preventing almost every contract case from being converted to a tort for jurisdictional purposes." *Id.* at 796. Such characterizations cannot be used as a basis to establish jurisdiction under New York law. *Id.; see also Trafalgar Capital Corp. v. Oil Producers Equip. Corp.,* 555 F.Supp. 305, 310 (S.D.N.Y.1983) (no jurisdiction where plaintiff tried to turn breach of contract claim into tort claim by alleging that defendant misrepresented that it would perform under the contract); *Amigo Foods Corp. v. Marine Midland Bank-New York,* 384 N.Y.S.2d at 127 (breach of contract cannot be used as basis for long-arm jurisdiction under CPLR 302 (subd. [a], pars. 2, 3)).

*11 In the instant case, China Resource seeks to establish personal jurisdiction based on China Distributors' alleged fraud. China Resource's bare

assertions of fraud cannot, however, transform this contract case into a tort case for jurisdictional purposes. As China Resource is simply trying to convert its contract claim into a tort claim, the Court determines that personal jurisdiction will not lie under either CPLR 302(a)(3)(i) or (ii). Thus, China Resource's other arguments under CPLR 302(a)(3)(i) and (ii) need not be considered. [FN7]

CONCLUSION
For the reasons set forth above, China Distributors' motion to dismiss the complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), is granted. This order closes the case.

SO ORDERED.

> FN1. As the Court grants China Distributors' motion to dismiss for lack of personal jurisdiction, the Court need not consider China Distributors' motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(3), for improper venue.

> FN2. Unless otherwise indicated, the following facts are taken from the Complaint, the Affidavit of N. Dale Washburn in Support of Defendant's Motion to Dismiss, sworn to on February 11, 1993 ("Washburn Aff."), the Supplemental Affidavit of N. Dale Washburn in Support of Defendant's Motion to Dismiss, sworn to on April 14, 1993 ("Washburn Supp.Aff."), and the Affidavit of Hui Ping Wang in Opposition to Defendant's Motion to Dismiss or Transfer, sworn to on March 19, 1993 ("Wang Aff.").

> FN3. Americans cannot purchase goods directly from Chinese factories, but rather, must negotiate through a Chinese import/export company licensed by the Chinese government.

> FN4. Two additional factors to consider in a personal jurisdiction analysis are (1) the

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                      Page 10

Not Reported in F.Supp., 1994 WL 440719 (S.D.N.Y.)

**(Cite as: 1994 WL 440719 (S.D.N.Y.))**

site of the negotiations; and (2) whether the goods ever passed through New York. *See Rainbow Indus. Prods. v. Haybuster Mfg., Inc.,* 419 F.Supp. at 546; *Empresa Nacional Siderurgica, S.A. v. Glazer Steel Co.,* 503 F.Supp. at 1065-66. In the present case, China Distributors was in China and Nebraska, but not in New York, during the mail and telephone negotiations. Moreover, important meetings occurred outside New York, in Nebraska and China, after China Distributors received defective goods from Beijing Machinery. In addition, the goods did not pass through New York, but rather traveled from China to Nebraska. Thus, the fact that (1) significant meetings took place outside New York, (2) no important meetings occurred in New York, and (3) the goods never travelled into New York indicates that personal jurisdiction over China Distributors is lacking in this forum.

FN5. It should also be noted that, while plaintiff in its Memorandum of Law applies the purposeful availment test of *Hanson v. Denckla,* 357 U.S. at 253, *see* Pl.Mem. at 13, CPLR 302 does not extend personal jurisdiction to the constitutionally-permitted limits. *See, e.g., Hedlund v. Products from Sweden, Inc.,* 698 F.Supp. 1087, 1090 (S.D.N.Y.1988).

FN6. Two final factors to consider in a NYCPLR section 302 analysis are (1) who initiated the contact between the parties and (2) whether a choice of law clause was included as part of the agreement. *See, e.g., Citicorp Int'l Trading Co. v. Western Oil & Refining Co.,* 708 F.Supp. at 88-89 (personal jurisdiction found in part because defendant initiated contacts with New York company); *Manufacturers Hanover Leasing Corp. v. Ace Drilling Co.,* 720 F.Supp. 48, 50 (S.D.N.Y.1989) (choice of law clause is a relevant factor in personal jurisdiction analysis). Although China Resource uses vague terms,

indicating that China Distributors "turned to," *see* Wang Aff. at ¶ 13, Pl.Mem. at 5, and purposefully "sought," *see* Pl.Mem. at 15, an agreement with China Resource when Beijing Machinery could not solve the financing problems, China Resource's vague allegations are less persuasive than China Distributors' affidavit, which states quite clearly that Beijing Machinery, not China Distributors, initiated the contact between China Distributors and China Resource. *See* Washburn Aff. at ¶ 11. Furthermore, the November Agreement does not have a choice of law clause. Thus, these two factors also weigh against a finding of personal jurisdiction over China Distributors under NYCPLR § 302(a)(1).

FN7. Even if China Resource had not simply tried to turn its contract claim into a tort claim, China Resource has failed to maintain a *prima facie* case that China Distributors "regularly does or solicits business ... or derives substantial revenue from goods used or consumed or services rendered, in the state," as per NYCPLR § 302(a)(3)(1). China Resource cites no cases and gives no specific data to support its theories that China Distributors "regularly solicits business" in New York by requesting credit from China Resource or that "by reselling the merchandise, defendant intended to generate substantial revenue," Pl.Mem. of Law at 19, "from goods used or consumed or services rendered, in the state." NYCPLR § 302(a)(3)(i).

Not Reported in F.Supp., 1994 WL 440719 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.