

1986 WL 6788    Page 1

Not Reported in F.Supp., 1986 WL 6788 (S.D.N.Y.)

**(Cite as: 1986 WL 6788 (S.D.N.Y.))**

C
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
CELTON MAN TRADE, INC., Plaintiff,
v.
UTEX S.A., Defendant.
**No. 84 Civ. 8179 (WCC).**

June 12, 1986.
Brauner Baron Rosenzweig Kliger Sparber & Bauman, New York City, for plaintiff; Mel P. Barkan, Laura A. Larks, of counsel.

Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for defendant; David S. Elkind, Steven H. Reisberg, of counsel.

*OPINION AND ORDER*

CONNER, District Judge.

*1 Plaintiff Celton Man Trade, Incorporated ("CMT"), a New York commodities broker, brought this action against Utex S.A. ("Utex"), a Swiss corporation, for an alleged breach of contract. Subject matter jurisdiction is predicated upon the diversity of citizenship of the parties.

This matter is now before the Court on Utex's motion to dismiss this action (i) for lack of personal jurisdiction, pursuant to rule 12(b)(2), Fed.R.Civ.P., (ii) pursuant to the doctrine of *forum non conveniens,* and (iii) pursuant to Swiss law. For the reasons set forth below, Utex's motion to dismiss for lack of personal jurisdiction is granted. I therefore need not and do not address the other grounds Utex has advanced in support of its motion to dismiss.

*Background*

In March 1983, CMT and Utex entered into an oral contract whereby CMT agreed to act as Utex's undisclosed agent to purchase in the United States certain rice which Utex intended to resell in Nigeria. [FN1] CMT alleges that Utex agreed to pay it transaction fees of $5 per metric ton on purchases and sales of rice, interest on advances CMT made to finance or refinance rice purchases, plus demurrage, freight, and various other costs and expenses. CMT also alleges that Utex agreed to deposit $50 per metric ton with CMT as "margin."

Between March 1983 and October 1983, Utex telephoned or telexed CMT in New York and authorized the purchase of 33,000 metric tons of rice on its behalf. [FN2] CMT financed these purchases at an aggregate cost of $13,303,163 plus demurrage, freight, stevedoring, fumigation, storage, and other expenses. Utex paid CMT only $950,000 as margin deposits for these transactions. Utex was unable to resell the rice as intended, in part because there was a revolution in Nigeria in December 1983. When Utex failed to pay CMT, CMT sold the rice and applied the sale proceeds to Utex's outstanding balance. CMT contends that Utex still owes it $2,802,429.14.

As noted above, Utex has moved to dismiss on various grounds, including lack of personal jurisdiction. Because I conclude that the Court does indeed lack personal jurisdiction over Utex, I need not and do not address Utex's other grounds for its motion.

*Discussion*

In diversity cases, this Court must look to New York Civil Practice Law and Rules ("CPLR") sections 301 and 302 to determine whether it may assert personal jurisdiction over a defendant. *See United States v. First Nat'l City Bank,* 379 U.S. 378, 381-82 (1965); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 222-23 (2d Cir.1963) (en

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

1986 WL 6788                                                                                                                    Page 2

Not Reported in F.Supp., 1986 WL 6788 (S.D.N.Y.)

**(Cite as: 1986 WL 6788 (S.D.N.Y.))**

banc). The plaintiff bears the burden of establishing that the defendant is subject to the jurisdiction of the court. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985).

Under CPLR § 301, a court may assert jurisdiction over a defendant that is "doing business" in New York. "[A] corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the corporation's New York contacts, if it does business in New York 'not occasionally, but with a fair measure of permanence and continuity.' " *Hoffritz,* 763 F.2d at 58 (quoting *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917)). CMT has offered no evidence that Utex is doing business in New York. For example, Utex has never had offices, employees, or bank accounts in this state and has never been licensed to do business here. [FN3] Reply Affidavit of Leon Levy ¶ 2.

*2 Under CPLR § 302, a court may assert jurisdiction over a defendant who "transacts business" in New York as to any cause of action arising out of such transaction of business. *Hoffritz,* 763 F.2d at 58. "The showing necessary for a finding that defendant 'transacted business' and is suable on a cause of action arising from that transaction is considerably less than that needed to establish defendant's 'doing business.' " *Id.* (citing *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 763 (2d Cir.1983)). While this determination depends on the facts and circumstances of each case, the basic inquiry is whether the "defendant has engaged in some purposeful activity in this State in connection with the matter in suit." *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 457 209 N.E.2d 68, 75, 261 N.Y.S.2d 8, 18, *cert. denied,* 382 U.S. 905 (1965).

Utex contends that it has not engaged in any purposeful acts in New York. It argues that CMT seeks to attribute to Utex CMT's own acts in New York as Utex's undisclosed agent in order to obtain personal jurisdiction. Utex maintains that under *Haar v. Armendaris Corp.,* 31 N.Y.2d 1040, 294 N.E.2d 855, 342 N.Y.S.2d 70 (1973), *rev'g mem. on the dissenting opinion below* 40 A.D.2d 769, 337 N.Y.S.2d 285 (1st Dep't 1972), CMT may not do so. In *Haar,* the New York Court of Appeals held that an agent cannot establish jurisdiction over his out-of-state principal solely on the basis of the agent's own acts in New York.

In response, CMT notes that the *Haar* doctrine has been criticized frequently, and suggests that "courts have looked to avoid the restrictions of *Haar* where as in the present case, it [sic] can find meaningful distinctions." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint at 11-12 [hereinafter cited as "Plaintiff's Mem." ]. CMT contends that there are meaningful distinctions between this case and those cases in which courts have applied the *Haar* doctrine. In particular, CMT argues that *Haar* is inapplicable because (i) CMT made loans and held collateral in New York in connection with Utex's export business, (ii) CMT and Utex had a purchaser-seller relationship with respect to a portion of the transactions, [FN4] (iii) Swiss courts would apply New York law to the transactions at issue, (iv) CMT and Utex were in daily communication by telephone and telex, and (v) CMT was an undisclosed agent for Utex, and thereby assumed the obligations of a New York principal.

I do not find any of these supposed differences "meaningful," and I therefore conclude that *Haar* is applicable. None of the cases CMT cites is to the contrary. In *Drexel Burnham Lambert, Inc. v. D'Angelo,* 453 F.Supp. 1294 (S.D.N.Y.1978), this Court did decline to apply the *Haar* doctrine. However, *D'Angelo* involved quasi-in-rem jurisdiction, not personal jurisdiction. *Id.* at 1295-96. As a result, the Court was concerned with the constitutional minimum contacts standard of due process, not the more restrictive statutory standards embodied in CPLR sections 301 and 302. Thus, the Court held that "the acts of [the] plaintiff-agent [could] be attributed to [the] foreign defendant for jurisdictional purposes ... *even though they would be insufficient for jurisdiction under [ CPLR] § 302." Id.* at 1297 (emphasis added).

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

**\*3** In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos,* 553 F.2d 842 (2d Cir.1977), the Second Circuit declined to apply the *Haar* doctrine. However, *Lecopulos* also was not decided under CPLR sections 301 or 302. Because the defendant had agreed to arbitrate in New York, the court concluded he had consented to personal jurisdiction in New York; the court expressly noted that it did not have to consider whether there was personal jurisdiction under CPLR sections 301 or 302. *Id.* at 884 & n. 2.

The other cases CMT cites do not even mention the *Haar* line of cases. In any event, they are inapposite. Many were decided before *Haar.* *See, e.g., Irving Trust Co. v. Smith,* 349 F.Supp. 146 (S.D.N.Y.1972); *Lewis & Eugenia Van Wezel Found., Inc. v. Guerdon Indus., Inc.,* 450 F.2d 1264 (2d Cir.1971). In the others the principal-defendant had itself engaged in activity within New York. *See, e.g., Sterling Nat'l Bank & Trust Co. v. Fidelity Mortgage Investors,* 510 F.2d 870, 873 (2d Cir.1975).

The fact that *Haar* applies to this case does not dispose of Utex's motion. *Haar* merely removes from the jurisdictional calculus the acts of the agent committed on the foreign principal's behalf. The Court may still assert personal jurisdiction over the foreign principal if the principal's own forum-related activities constitute the transaction of business in New York.

CMT has alleged only that Utex telephoned and telexed New York on numerous occasions, and that Utex paid for some of the early rice purchases through Paribas (Suisse) S.A. ("Paribas") and Paribas' New York correspondent bank, Paribas (N.Y.). It is well settled that under New York law these acts are insufficient to confer jurisdiction over Utex. A defendant who merely places telephone calls or sends telexes to persons in New York is not thereby subject to personal jurisdiction here. For example, in *M. Katz & Son Billiard Prods., Inc. v. G. Correale & Sons, Inc.,* 20 N.Y.2d 903, 232 N.E.2d 864, 285 N.Y.S.2d 871 (1967), *aff'g* 26 A.D.2d 52, 270 N.Y.S.2d 672 (1st Dep't 1966), the plaintiff was a New York company engaged in the manufacture of billiard equipment. The defendant was a New Jersey company. In accordance with the parties' thirty-year-old practice, the defendant placed a telephone order for billiard cues and triangles. The plaintiff shipped the equipment to the defendant's place of business in New Jersey by common carrier, f.o.b. the plaintiff's factory in New York City. After receiving the goods, the defendant telephoned the plaintiff and requested credits totalling $66 for the return of some of the equipment. Plaintiff granted the credits, but the defendant never paid the balance of $904.70 due on the shipment. The Court of Appeals held that there was no jurisdiction over defendant. *See also Agrashell, Inc. v. Bernard Sirotta Co.,* 344 F.2d 583, 587-88 (2d Cir.1965) (Court lacked personal jurisdiction over nondomiciliary defendant who had solicited orders from New York company by mail and by telephone); *Lichtenstein v. Jewelart, Inc.,* 95 F.R.D. 511, 514 (E.D.N.Y.1982) ("Courts have consistently held that the mere telephoning or mailing of orders to a New York seller by an out-of-State buyer does not subject the buyer to *in personam* jurisdiction under § 302. Nor is this conclusion changed by the quantity of purchase orders, the number of phone calls, or the length of the parties' business relationship.") (citations omitted); *Empresa Nacional Siderurgica, S.A. v. Glazer Steel Co.,* 503 F.Supp. 1064, 1065-66 (S.D.N.Y.1980) (Weinfeld, J.) ("[T]he placing of the order by telex with [the plaintiffs'] agent in New York did not subject [the defendant] to in personam jurisdiction under [CPLR] section 302; nor is this conclusion changed by the number of telephone calls and telexes.") (footnote omitted); *Rainbow Indus. Prods. v. Haybuster Mfg., Inc.,* 419 F.Supp. 543, 545-46 (E.D.N.Y.1976) (Telephone calls and letters insufficient to confer jurisdiction under CPLR § 302); *L.F. Rothschild, Unterberg, Towbin v. McTamney,* 89 A.D.2d 540, 540-41, 452 N.Y.S.2d 630, 631 (1st Dep't 1982) (Court lacked personal jurisdiction over defendant who made numerous telephone calls from his home in Pennsylvania to stock broker in New York which eventually resulted in a telephonic purchase order for certain stock), *aff'd,* 59 N.Y.2d 651, 449 N.E.2d 1275, 463 N.Y.S.2d 197 (1983).

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

*4 It is also well settled that the existence of a correspondent banking relationship between a foreign bank and a New York correspondent bank does not subject the foreign bank to jurisdiction here. *Verlinden B.V. v. Central Bank of Nigeria,* 488 F.Supp. 1284, 1299 (S.D.N.Y.1980) (Weinfeld, J.), *aff'd,* 647 F.2d 320 (2d Cir.1981), *rev'd on other grounds,* 461 U.S. 480 (1983); *Amigo Foods Corp. v. Marine Midland Bank,* 39 N.Y.2d 391, 348 N.E.2d 581, 384 N.Y.S.2d 124 (1976); *Taub v. Colonial Coated Textile Corp.,* 54 A.D.2d 660, 387 N.Y.S.2d 869 (1st Dep't 1976). Obviously, the fact that Utex had a banking relationship with Paribas, which in turn had a correspondent banking relationship with Paribas (N.Y.), cannot confer jurisdiction over Utex. Nor are telephone calls and telexes to New York and payments through a New York correspondent bank taken together sufficient.

*Conclusion*

In sum, I have concluded that CMT may not rely on its own acts to establish jurisdiction over Utex.
I have also concluded that Utex's own forum-related acts are insufficient for this Court to assert jurisdiction over it. Therefore, Utex's motion to dismiss for lack of personal jurisdiction is granted.
I need not and do not address the other grounds Utex has advanced in support of its motion.

SO ORDERED.

> FN1. The parties do not agree whether Utex solicited CMT or CMT solicited Utex.

> FN2. CMT has attempted to distinguish certain initial purchases of rice from the balance of its purchases on Utex's behalf. According to CMT, on these initial transactions, it
> momentarily took title to the rice and immediately resold it to Utex. The warehouse receipts for those initial rice purchases were delivered to and held as security at Paribas (N.Y.) in New York City through which bank Utex financed the transactions. Utex, through Paribas (N.Y.), paid CMT the entire purchase price in New York. Thus with respect to the initial transactions, CMT technically was the New York seller of rice to Utex and not merely an agent. This argument is more than a little puzzling. I can discern no distinction between these initial purchases and the later ones, except, of course, that Utex apparently paid CMT the purchase price incurred in the initial purchases.

Since CMT acted as Utex's undisclosed agent, CMT held title at some point to each lot of rice it purchased on Utex's behalf. CMT did not re-sell the initial purchases to Utex any more than it re-sold the later purchases to Utex. It merely transferred title to Utex, the undisclosed principal for whom CMT had acted.

> FN3. CMT claims it is entitled to discovery on the issue of whether Utex has done business in New York. However, all CMT has offered is the unsupported speculation that Utex may have done business here, a claim that Utex has denied in a sworn affidavit. *See* Reply Affidavit of Leon Levy ¶ 2. Absent more, this Court is not inclined to authorize a fishing expedition.

> FN4. *See supra* note 2.

Not Reported in F.Supp., 1986 WL 6788 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.