EXHIBIT "F"

7A2GJEWC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  JEWELRY 47, INC.,

4              Plaintiff,

5        v.                          07 CV 8272 (PAC)

6  LARRY BIEGLER, DIONE TILLMAN,
   and ELOHIM FINANCIAL, INC.,
7
             Defendants.
8
   ------------------------------x
9                                    New York, N.Y.
                                     October 2, 2007
10                                   3:40 p.m.

11 Before:

12              HON. PAUL A. CROTTY,

13                                   District Judge

14                  APPEARANCES

15 GORDON & GORDON, P.C.
        Attorneys for Plaintiff
16 BY:  PETER S. GORDON

17 REED SMITH, LLP
        Attorneys for Defendant Larry Biegler
18 BY:  SCOTT STEPHEN McKESSY
        JOE M. TEIG
19
20 JULES MARTIN HAAS
        Attorney for Defendants Dione Tillman and Elohim Financial

21

22

23

24

25

7A2GJEWC

1          (Case called)

2          (In open court)

3          THE DEPUTY CLERK:  Will counsel please state their

4   appearances for the record.

5          MR. GORDON:  Peter S. Gordon, Gordon & Gordon, P.C.

6   Good afternoon, your Honor.

7          THE COURT:  Hello, Mr. Gordon.

8          THE DEPUTY CLERK:  And for the defendants?

9          MR. McKESSY:  Good afternoon, your Honor.  Scott

10   McKessy from Reed Smith representing Larry Biegler.  And this

11   is my colleague Joe Teig from the same firm.

12          THE COURT:  Good afternoon.

13          MR. HAAS:  Good afternoon, your Honor.  Jules Martin

14   Haas.  I'm appearing today for Mr. Tillman and Elohim

15   Financial.  I literally got these papers about an hour, two

16   hours ago, and I spoke briefly with Mr. Tillman.  So I'm

17   appearing here today on their behalf.  I have not formalized my

18   relationship with them, given the short period of time, but I

19   did want to come down today to today's hearing, and obviously,

20   with respect to my appearance, all defenses and jurisdictional

21   defenses, everything else are being preserved.

22          THE COURT:  Yes.  Have you filed a notice of

23   appearance?

24          MR. HAAS:  I haven't, your Honor.  I literally spoke

25   with this fellow an hour ago.

7A2GJEWC

1         THE COURT:  All right.  And Mr. McKessy, I have your

2    papers here.

3         MR. McKESSY:  Yes, your Honor.

4         THE COURT:  The opposition to appointment of a

5    temporary receiver.  I suppose you have a motion to dismiss as

6    well.

7         MR. McKESSY:  It would be shortly coming thereafter,

8    your Honor.  We too are operating not under quite the same time

9    constraints as Mr. Haas, but over the weekend and yesterday,

10   papers were just finished --

11        THE COURT:  Mr. Haas, I don't mean to belabor you,

12   because I understand your situation, but could you tell me a

13   little bit about Mr. Tillman and Elohim Financial.  Are they

14   California entities as well?

15        MR. HAAS:  My understanding is -- and I can tell you

16   what I know, your Honor, which is very little.  My

17   understanding is that they are California entities,

18   individuals.  I understand that this transaction sort of took

19   place -- whatever was taking place seems to have taken place

20   outside of New York state.  But really, with respect to all the

21   particulars with respect to Mr. Tillman, I really am not in a

22   position to make any representations to the Court.  I'm not

23   comfortable enough, based on the short period of time that I

24   have had, to inquire as to this.

25        THE COURT:  All right.  That's fair enough.  I won't

7A2GJEWC

1   press you further.

2          All right.  Mr. Gordon, could you give me your side of

3   the story, please.

4          MR. GORDON:  Yes.  The defendant Biegler, through a

5   nonparty Jeff Downey, a California resident, had sought out

6   Jewelry 47 to place an emerald, which is the largest emerald in

7   the world at 840 pounds and 180,000 carats, promoted on eBay as

8   well as another promotion.  After they sought out my client, he

9   had his son go out to California to visit and take photographs

10  of the emerald.  He took photographs of the emerald along with

11  the certificates proving the value and so forth, placed it on

12  eBay.

13         The defendants Elohim Financial and Dione Tillman were

14  interested in purchasing it for a $19 million price.  They

15  refused to bid on eBay and do the transaction through eBay.  So

16  I was retained to prepare a contract of sale, which I have

17  done.  It was forwarded out to Mr. Tillman and Elohim

18  Financial.

19         A few days after that contract was received by them,

20  they had alerted me that my client, Jewelry 47, despite in a

21  written agreement to that effect, did not have a right to sell

22  it.  E-mails were corresponding between the defendant Biegler

23  through an agent, a Marco Diaz Infante, of his to my client

24  Jewelry 47, Inc., which indicated that there was a $75 million

25  deal that was going for the sale, that my client should sit

7A2GJEWC

1    tight.  And then there was rumblings about a consolation prize

2    of I think about half a million dollars for Jewelry 47 to split

3    with another finder, the nonparty Jeff Downey.

4          At that point we moved as quickly as possible for the

5    appointment of a temporary receiver to oversee the sale to

6    ensure that my client receive the commission based upon the

7    agreement, the joint venture agreement, which is attached to

8    our complaint and part of the papers.

9          After --

10         THE COURT:  The joint venture agreement is the one

11   that is signed by Mr. Biegler and Downey?

12         MR. GORDON:  Yes, and Gary Weiss.

13         THE COURT:  And Gary Weiss.  And Mr. Weiss is

14   Jewelry -- is he Jewelry 47?

15         MR. GORDON:  Yes, Jewelry 47, Inc.

16         THE COURT:  Now, what do you say about Mr. Biegler?

17   It says his signature is forged.

18         MR. GORDON:  Well, he had contacted me as soon as we

19   FedEx'd the papers before the order to show cause was proposed,

20   and he said that it was forged.  And at that point I secured an

21   affirmation from Gary Weiss, who was an eyewitness to the

22   signature.  I had also secured other samples of Mr. Biegler's

23   handwriting and was waiting for some type of appearance from

24   the defendants before I retained any type of handwriting expert

25   or so forth, which just occurred about an hour, hour and a half

7A2GJEWC

1    ago.  I'm ready to submit this to a Julia Bavaca, who is a

2    handwriting expert and has testified before in this court and

3    has been certified by this court.

4         With regard to the samples that I have, they are

5    Mr. Biegler's handwriting from March of '07 on a lease

6    agreement, as well as a purchase of sale agreement, and those

7    contracts have, in fact, been executed and gone through.

8         There's also a handwritten note.  So those are the

9    samples along with the original agreement that I have, which,

10   if necessary, I will submit to a handwriting expert.

11        THE COURT:  I think you're going to have to.  Listen,

12   I saw someplace that you issued a press release.

13        MR. GORDON:  Burton Pugach, who is a good friend and

14   he's somewhat of a celebrity, had helped me with the papers

15   here.  And he has a press agent, because there's a movie called

16   Crazy Love about him.  And that was done through, I believe,

17   his service.  Dan Klores produced a movie Crazy Love about him

18   and his life.

19        THE COURT:  Do you agree with me that the press

20   release is wrong?

21        MR. GORDON:  Yes.

22        THE COURT:  Completely wrong?

23        MR. GORDON:  With regard to the appointment of a

24   temporary, yes.

25        THE COURT:  Did you issue any corrective advertising?

7A2GJEWC

1          MR. GORDON:  No.

2          THE COURT:  Did you remonstrate with Mr. Pugach about

3  issuing press releases?

4          MR. GORDON:  I spoke to him, but he was in the

5  hospital for two days over the weekend.  So I didn't want to --

6          THE COURT:  So the record is very clear, we understand

7  that all I did was allow you to bring this matter on by order

8  to show cause.  There's no receiver.  Correct?

9          MR. GORDON:  Yes, your Honor.

10          THE COURT:  All right.  Now, Mr. McKessy, what motions

11  do you want to make and what schedule do you want to be

12  entered?

13          MR. McKESSY:  Well, your Honor, it's part of our

14  papers.  One of the reasons why we're objecting and opposing to

15  the instant receiver, beyond the forgery issue, which your

16  Honor noted, is that there are issues of jurisdiction.  Mr. --

17          THE COURT:  I understand that.

18          MR. McKESSY:  Okay.  There's been a flurry of

19  e-mails -- faxes over the weekend and yesterday.  I'm putting

20  it all together.  If we could have two weeks to make our

21  motion, I think we could do it in that time.  But there are

22  also some other issues to address, which actually go to the

23  subject matter jurisdiction.

24          Putting the forgery aside, on the agreement, the other

25  party to it is Jeff Downey.  Jeff Downey is alleged to be a

7A2GJEWC

1   California citizen.  He is a California citizen.  He's living

2   in one of the homes that my client owns out there.  He's a

3   necessary party.  Why is he not named in here?  Well, if you

4   name him in here, there's no more diversity jurisdiction.

5          THE COURT:  Why is that?

6          MR. McKESSY:  Well, he's a California resident, and

7   everybody else is a California resident too.  Now they're on

8   opposite sides of the "v." if they're named as an additional

9   plaintiff.

10          THE COURT:  I thought that Mr. Weiss was a New York

11   resident.  Is that right?

12          MR. McKESSY:  Actually, Mr. Weiss is a New York

13   resident.

14          THE COURT:  And Jewelry 47, Inc., is a New York

15   corporation?

16          MR. McKESSY:  I believe so.  My understanding was

17   that --

18          THE COURT:  And the people on the other side are

19   California?

20          MR. McKESSY:  Yes.

21          THE COURT:  And who is the gentleman you say is

22   missing?

23          MR. McKESSY:  Mr. Downey.

24          THE COURT:  Mr. Jeff Downey.

25          MR. McKESSY:  Downey.

7A2GJEWC

1          THE COURT:  He's a California resident too.

2          MR. McKESSY:  Yes.

3          THE COURT:  How does that destroy the diversity?

4          MR. McKESSY:  Well, if he's joined as plaintiff, which

5     he's on the contract as being an additional --

6          THE COURT:  Oh, I see.

7          MR. McKESSY:  He shares in the commission as

8     Mr. Gordon said that they are seeking.  So he's a necessary

9     party here, and so if he's joined as a plaintiff, we don't have

10    that --

11         THE COURT:  Okay.  I thought he was a defendant.  So I

12    didn't understand your point about --

13         MR. McKESSY:  Oh, I'm sorry, your Honor, I didn't make

14    that clear.  So there's a lot of issues about personal

15    jurisdiction beyond the personal jurisdiction issues we would

16    be raising.

17         THE COURT:  Now, do you know what the standard is

18    under the Federal Rules of Civil Procedure?  We look to CPLR --

19         MR. McKESSY:  Yes, your Honor.

20         THE COURT:  And this is a transaction -- I gather the

21    allegation is that you did business in New York?

22         MR. McKESSY:  The allegations regarding jurisdiction

23    are in paragraph 2 of the complaint, very conclusory.  They

24    say, one, that the agreement was executed in New York.  Well,

25    maybe Mr. Weiss signed the document in New York, but if you

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7A2GJEWC

1    believe what they say about when the document was executed by

2    Mr. Biegler, that occurs on May 30th back in California, and

3    the person who signs it is Jeff Downey, the California

4    resident.  His declaration doesn't say that he flies to New

5    York to sign it.  So I'm presuming that he signed it in

6    California.  I could be wrong --

7            THE COURT:  The emerald is in California?

8            MR. McKESSY:  Yes.  It's in a secure facility out

9    there.  It's subject to a lien by LLV Financial, who has a

10   collateral security interest, and they actually control access

11   to it.  And Mr. Biegler doesn't even own the emerald, your

12   Honor.  It's owned by an entity that he works for, B&B

13   Services.  And the title is attached.  So beyond that, the only

14   other allegations about jurisdiction is that they say a portion

15   of the contract was performed in New York, and that's it.  I'm

16   assuming that's --

17           THE COURT:  What portion was to be performed in New

18   York?

19           MR. GORDON:  That's where the eBay promotion and the

20   other promotional services were performed by Mr. Weiss.  He

21   took all the documents and had everything placed on eBay.

22   That's where his office is.  That's where he solicited bids.

23   There were over a thousand hits on that particular site.  There

24   were many calls and inquiries to his office, to him about this

25   emerald, and they had a big promotion.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7A2GJEWC

1           THE COURT:  So what is your view of the contract here,

2     Mr. Gordon, that after the contract was signed, you were

3     empowered to start sales efforts?

4           MR. GORDON:  That's right.  We had --

5           THE COURT:  And all your sales efforts were in New

6     York?

7           MR. GORDON:  That's right.

8           THE COURT:  And that's the basis for jurisdiction

9     here?

10          MR. GORDON:  Well, and also that they came to us,

11    solicited us from New York to put this on.  We didn't solicit

12    them to have this contract.  They sought us out, as Jewelry 47

13    sells many items on eBay, and as a result of that reputation,

14    they came to us to put this on to attract the attention that

15    Jewelry 47 is able to do.

16          MR. McKESSY:  Your Honor, actually, Jeff Downey

17    arranged the other party --

18          THE COURT:  Mr. McKessy, you say you want two weeks?

19    Today is the 2nd.  How long do you need to gather your papers

20    and make whatever motions are necessary?

21          MR. McKESSY:  If I could do that in two weeks.

22          THE COURT:  All right.  Now, Mr. Haas, to the extent

23    you have similar motions, I want you to be proceeding on the

24    same time frame as Mr. McKessy.

25          MR. HAAS:  Yes, your Honor.

7A2GJEWC

1    THE COURT:  So you'll be able to do it by the 16th as

2    well?

3    MR. HAAS:  We will, your Honor.

4    THE COURT:  All right.  Mr. Gordon, how much time do

5    you want to respond?

6    MR. GORDON:  Two weeks, your Honor.

7    THE COURT:  That will be the 30th.  So 16th for you,

8    Mr. McKessy to make your motions.  That would be two weeks.

9    Two weeks for response will be October 30th, and then a week

10    for your reply, Mr. McKessy, that will be November the 6th.

11    MR. McKESSY:  Yes, your Honor.

12    MR. HAAS:  And if I may, your Honor, subject to my

13    formalizing my relationship with the client during this period

14    of time.

15    THE COURT:  Of course.  Now, if you were not able to

16    formalize the relationship, tell whoever substitutes for you

17    that we have a motion schedule.

18    MR. HAAS:  Yes, your Honor.

19    THE COURT:  And I don't want to interrupt the motion

20    schedule.

21    MR. HAAS:  Yes, your Honor.

22    THE COURT:  So they're going to have to get on board

23    the train that's moving now.

24    MR. HAAS:  I understand.

25    THE COURT:  With motions to be made by the 16th,

7A2GJEWC

1   responses by the 30th and replies by the 6th so we can resolve

2   this at the beginning.

3           Now, Mr. Gordon, I don't like to see orders that I

4   have entered misconstrued in the paper by people who are not

5   involved in the lawsuit.  Now, is Mr. Pugach, is he an admitted

6   attorney?

7           MR. GORDON:  No, your Honor.

8           THE COURT:  But he does work for you?

9           MR. GORDON:  Yes.  He --

10          THE COURT:  Under your supervision?

11          MR. GORDON:  Yes.

12          THE COURT:  Well, I would suggest to you that you tell

13  Mr. Pugach that he's not to issue press releases dealing with

14  this lawsuit, and I hope I don't see again a press release

15  which misconstrues what I did.  I thought it was very clear

16  here that I struck out the demand for security and insisted

17  that you serve in accordance with the Federal Rules of Civil

18  Procedure.  And you yourself did not ask for the appointment of

19  an interim temporary receiver.  Your action is for receiver.

20  Correct?

21          MR. GORDON:  Yes, your Honor.

22          THE COURT:  And I didn't grant that relief.  Correct?

23          MR. GORDON:  Yes, your Honor.

24          THE COURT:  All right.  Is there anything else to do

25  today?

14

7A2GJEWC

1          MR. GORDON:  Your Honor, there is an issue.  From what

2  my client understands, there is an imminent sale of this

3  emerald for, I believe, October 5th, and I would just like to

4  be apprised as to the status of the sale.

5          THE COURT:  If they want to.  If they want to

6  volunteer that information, they can.  I'm not appointing a

7  receiver today.  You haven't established any kind of basis for

8  relief, injunctive relief.  I'm not going to appoint a

9  receiver.  So if they want to tell you, they can.  If they

10  don't want to tell you, they don't have to.

11          Do you want to tell him?

12          MR. McKESSY:  Your Honor, I'm not sure of the status

13  of the -- again, I'm operating at a little more leeway than

14  Mr. Haas, but I was able to put together our papers to address

15  the instant application, and I will discuss it with my clients.

16          THE COURT:  Okay.  That's the answer.  Now, if you

17  want any more relief, injunctive relief, you're going to have

18  to move pursuant to rule 65 for such relief as you deem is

19  appropriate, but right now I think the best way to address this

20  case is on the jurisdictional grounds that have been raised by

21  the defendants and also whether all the necessary parties are

22  here before we proceed further in this matter.

23          Anything else?

24          MR. McKESSY:  No, your Honor.

25          THE COURT:  Thank you very much.

15

7A2GJEWC

1          MR. GORDON:  Thank you, your Honor.

2          MR. HAAS:  Thank you.

3                              o0o